

December 3, 2015

<u>VIA ELECTRONIC CASE FILING</u>

The Honorable Margo K. Brodie
United Stated District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:     Response to Pre-Motion Conference Request
        Scott v. Greenberg et. al.
        Docket No. 1:15-cv-05527-MKB-RER

Dear Judge Brodie:

My office represents Plaintiff Daphney Scott ("Ms. Scott") in the above-referenced action. We respectfully submit this consolidated response to the letters filed by Defendant Maylah Furniture A/K/A Mylah Furniture Inc. ("Maylah"), Defendant E. Hope Greenberg ("Attorney Greenberg") and Defendant Capital Discount Corporation ("Capital Discount") (collectively, "Defendants") requesting a pre-motion conference regarding Defendants' anticipated motions pursuant to Fed. R. Civ. P. 12(b)(6). In light of the fact that Ms. Scott has stated facts that clearly establish violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., N.Y. Gen. Bus. Law § 349, N.Y. Judiciary Law § 487, and N.Y. Pers. Prop. Law § 402, and has timely asserted those claims, Defendant's motion to dismiss the instant action should be denied.

<u>Background</u>

This action is for Defendants' misleading and abusive business practices and debt collection tactics against Ms. Scott, and for inducing her into entering into an unlawful contract to finance defective furniture. When Ms. Scott first visited the Maylah store seeking to purchase furniture on a layaway plan, she was told by a salesperson that a layaway plan was not an option, and that she would have to finance the purchase instead. Am. Compl. at ¶ 12. The salesperson presented Ms. Scott with a piece of paper and instructed her to sign it, stating that this would allow him to search for financing for Ms. Scott. Am. Compl. at ¶ 14. Unbeknownst to Ms. Scott, and in direct contradiction of the salesperson's representation, the document was actually a Retail Installment Contract to finance the furniture. Am. Compl. at ¶¶14, 20-21. This document contained blank spaces omitting significant information, such as the interest rate and the amount of the monthly payments. Am. Compl. at ¶¶16, 27, 29. After the furniture was delivered to Ms. Scott, she received a copy of the document she had signed, with the blank terms filled in. Am. Compl. at ¶ 20. Despite Ms. Scott's clear instruction that she could not afford a high interest rate or high monthly payments, the financing for the furniture was at an usurious interest rate of 24.9%. Am. Compl. at ¶ 22. Ms. Scott called Maylah and sought to return the furniture, but was told that she

could not avoid her financial obligations under the contract regardless of whether she returned the furniture. Am. Compl. at ¶ 29. Ms. Scott made the payments required by the contract, until her mother became ill and Ms. Scott needed to assist her mother financially. Am. Compl. at ¶ 31. Once Ms. Scott was unable to continue making payments, in or around July 2013, she began receiving harassing collection calls from Capital Discount to her home, cell, and work phone numbers, despite the fact that Ms. Scott informed Capital Discount that she could not be contacted at work and the calls were placing her job in jeopardy. Am. Compl. at ¶¶ 31-32.

In January 2014, Capital Discount, represented by Attorney Greenberg, initiated a collection lawsuit against Ms. Scott in Kings County Civil Court. Am. Compl. at ¶ 33. Ms. Scott was never served in this action, but received a copy of the summons (but not the verified complaint) in the mail, whereupon she called Attorney Greenberg's office to find out when she had to appear in court. Am. Compl. at ¶¶ 35-38, 40. A representative at Attorney Greenberg's office told Ms. Scott that if she paid, she would avoid the lawsuit. Am. Compl. at ¶ 41. In reliance on this representation, Ms. Scott negotiated an oral agreement with Attorney Greenberg's office to pay the amount listed in the summons, and did not appear in court or file an answer. Am. Compl. at ¶¶ 41-46.

Ms. Scott made payments pursuant to this oral agreement for several months; however, on or about April 28, 2014, Attorney Greenberg, on behalf of Capital Discount, nevertheless entered a default judgment against Ms. Scott for $3,311.88, claiming legal costs and fees to which it was not entitled. Am. Compl. at ¶¶ 47, 49-51. The default judgment requested by Attorney Greenberg did not credit Ms. Scott for any of the approximately $850 in payments that Ms. Scott paid directly to Capitol Discount from January 2014 and up until the entry of the default judgment. Am. Compl. at ¶ 50. Ms. Scott learned of the default judgment only after her employer was served with an income execution from Marshal Bruce Kemp in or around February 2015. Am. Compl. at ¶ 58-59. Ms. Scott, not knowing that she had other options, made payments both to the Marshal and to Capital Discount in or around March through May 2015. Am. Compl. at ¶61.

On or about June 16, 2015, Ms. Scott, with the assistance of counsel, moved to vacate the default judgment, and the Kings County Civil Court granted Ms. Scott this relief and dismissed the action. Am. Compl. at ¶¶ 62, 64. Defendants' deceptive, harassing, and misleading behavior violated the Fair Debt Collection Practices Act, 15 USC § 1692 et seq. ("FDCPA"), N.Y. Gen. Bus. Law § 349, N.Y. Judicial Law § 487, and N.Y. Pers. Prop. Law § 402 and caused Ms. Scott significant harm.

Assuming the facts as alleged by Ms. Scott are true and with all inferences drawn in the Plaintiff's favor, as must be done in a motion to dismiss, *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006), Ms. Scott has more than adequately pleaded a claim on which relief can be granted. Thus, any motion by Defendants to dismiss this action for failure to state a claim for relief should be denied.

Legal Argument

I.     <u>Ms. Scott's claims against Attorney Greenberg pursuant to the Fair Debt Collection Practices Act are timely.</u>

Ms. Scott asserts violations of the Fair Debt Collection Practices Act, 15 USC § 1692 *et seq*. against Attorney Greenberg based on Attorney Greenberg's false and misleading representations, including informing Ms. Scott that she did not need to go to court, seeking a default judgment after representing that Ms. Scott did not need to go to court, unlawfully enforcing the default judgment after representing that Ms. Scott did not need to go to court, and representations of Defendants' entitlement for fees not authorized by agreement or law. Am. Comp. ¶ 70. Further, Attorney Greenberg violated the FDCPA by seeking amounts not expressly authorized by agreement or by law, filing a false affidavit of service, and engaging in harassing and abusive litigation conduct. *Id.*

Ms. Scott has raised numerous violations under the FDCPA that fall well within the statute's one-year limitations period. Am. Compl. ¶70 (c)-(g). For instance, on or about February 23, 2015, Capital Discount, on behalf of Attorney Greenberg sent a letter to Ms. Scott stating that Ms. Scott owed $160 in "legal costs," i.e., attorneys' fees. Claiming attorneys' fees unless expressly authorized by law or the agreement creating the debt is expressly prohibited by § 1692f. *See DiMatteo v. Sweeney, Gallo, Reich & Bolz, L.L.P.*, No. 14-3746, 2015 WL 4281508, at *3 (2d Cir. July 16, 2015) (without a basis under New York law or an agreement between the parties a demand for attorneys' fees constitutes a violation under the FDCPA). Attorney Greenberg also violated the FDCPA in or around February 2015 when Attorney Greenberg attempted to enforce the ill-gotten judgment by attempting to garnish Ms. Scott's wages. The debt collection letter and the wage garnishment notice from the Marshal are independent FDCPA violations. *See Sierra v. Foster & Garbus*, 48 F.Supp.2d 393, 395 (S.D.N.Y. 1999) (FDCPA violations may occur and accrue each time the threatening letter is sent and related to an improper collection of debt).

The relevant date for the purpose of determining when a statute begins to run is the most recent date on which the debt collector is alleged to have violated the FDCPA. *Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 443 (E.D.N.Y. 2013). If violations occurred within the one-year statutory period, the action must be found timely. Moreover, a violation of the FDCPA occurs when an injury occurs. *Benzemann v. Citibank N.A.*, No. 14-2668-CV, 2015 WL 7145772, at *3 (2d Cir. Nov. 16, 2015) As the Second Circuit held in *Benzemann*, within the context of the FDCPA, the injury occurs not when the attorney sends notice to collect a debt, but rather when the consumer feels the effect of the collection activity. *Id. See also Polanco v. NCO Portfolio Mgmt.*, 930 F. Supp. 2d 547, 552 (S.D.N.Y. 2013) (actions to enforce fraudulently obtained default judgment violate FDCPA); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (injury does not occur until receipt of the collection notice). Here, the most recent date when Attorney Greenberg violated the FDCPA is February 2015. Am. Compl. ¶¶57-58, 70(c)-(g). Ms. Scott did not feel the effect of the false misrepresentations made by Attorney Greenberg or the unlawfully-obtained judgment until the time at which Attorney Greenberg attempted to enforce the default judgment by attempting to garnish Ms. Scott's wages.

Nevertheless, even though Ms. Scott's FDCPA claims are timely, Ms. Scott is also entitled to equitable tolling of the one year statute of limitation for violations occurring in 2014. The FDCPA's statute of limitations may be equitably tolled if "(1) defendant concealed the existence of plaintiffs' cause of action; (2) plaintiffs remained ignorant of that cause of action until some

point within the limitations period; and (3) plaintiffs' continuing ignorance was not due to lack of diligence." *Coble v. Cohen & Slamowitz, LLP*, 824 F.Supp.2d 568, 571 (S.D.N.Y. 2011). Ms. Scott alleges that she remained ignorant of Attorney Greenberg's earlier FDCPA violations until within the limitations period, and alleges that Attorney Greenberg's misrepresentations concealed the attorney's misconduct. Am. Compl. ¶¶ 44-48. These allegations, which entitle Ms. Scott to equitable tolling, must be taken as true; a motion to dismiss on statute of limitations grounds may only be granted where untimeliness is apparent on the face of the complaint. *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009). Courts "should not . . . resolve[] . . . fact-specific equitable tolling issue[s] on defendants' motion to dismiss." *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir. 2006); *see also Doe v. Selsky*, 948 F. Supp. 2d 306, 310 (W.D.N.Y. 2013) (similar). Plaintiffs' claims also cannot be dismissed on the basis of extrinsic evidence like that which Defendant Attorney Greenberg has submitted here. (*See* Greenberg Affidavit, Ex. 1). The court may only resolve disputed issues of fact bearing on equitable tolling after discovery and after Plaintiff has had an opportunity to proffer her own relevant evidence. *See, e.g.*, *Upadhyay v. Sethi*, 848 F. Supp. 2d 439, 447 (S.D.N.Y. 2012).

II.   <u>Ms. Scott has stated a claim under N.Y. Gen. Bus. § 349 for deceptive, consumer-oriented misconduct.</u>

All three Defendants allege that Ms. Scott's claims against them pursuant to N.Y. Gen. Bus. § 349 must fail as a matter of law because Ms. Scott has failed to plead adequate facts showing that Defendants' violations of § 349 are not "consumer-oriented." The requirement that conduct must be "consumer-oriented" is afforded a liberal construction. *New York v. Feldman*, 210 F. Supp. 2d 294, 301 (S.D.N.Y. 2002). "A defendant engages in consumer-oriented activity if his actions cause any consumer injury or harm to the public interest." *Id.* (internal citations omitted). Courts repeatedly have held that a "routine" deceptive business practice affecting many similarly situated consumers is inherently consumer-oriented conduct that harms the public interest and thus violates the statute. *See, e.g., id.* at 301. In the Second Circuit, the consumer-oriented prong is satisfied when the alleged conduct potentially affects similarly situated consumers. *Kapsis v. Am. Home Mortgage Servicing Inc.*, 923 F. Supp. 2d 430, 450 (E.D.N.Y. 2013).

Here, as alleged in the Amended Complaint, Attorney Greenberg files thousands of lawsuits on behalf putative creditors for the collection of consumer debts including furniture purchases, car loans, and putative credit card accounts." Am Comp. ¶ 7. As pleaded by the Amended Complaint, Attorney Greenberg made numerous misrepresentations within the context of the debt collection action to Ms. Scott. Am Comp. ¶ 76(a)-(h). Attorney Greenberg has engaged, upon information and belief, in similar, consumer-oriented misconduct as a standard business practice with a substantial number of other New York consumer litigants who are sued by her office for putative consumer debts." Am. Compl. at ¶ 68. Similarly, Capitol Discount committed numerous deceptive acts in the conduct of its business with Ms. Scott. Am. Compl. ¶¶85-86. Capitol Discount has engaged, upon information and belief, in similar misconduct as a standard business practice with a substantial number of other New York consumers. Am. Compl. ¶ 67. *Capitol Discount Corp v. Rivera*, 38 Misc.3d 1226(A) 2013 WL 692940 (Kings Cty. Civ. Ct. 2013) (factual scenario similar to the one at hand involving Defendants Captiol Discount and Attorney Greenberg). Finally, Maylah is a furniture store located on Pitkin Avenue, Am. Compl. ¶ 10, and it deceptively induced Ms. Scott into signing an unaffordable retail installment contract

to purchase defective furniture. Maylah willfully committed these deceptive acts and practices in the conduct of its business. The consumer-oriented violations committed by all three Defendants are consumer-oriented and do not represent a mere individual contract dispute but rather represent widespread abuses that potentially affect thousands of similarly situated consumers. Am. Compl. ¶¶67-68. *See Fritz v. Resurgent Capital Services*, 955 F. Supp. 2d 163, 173-74 (E.D.N.Y. 2013). Thus, because Defendants' conduct had a "broad[] impact on consumers at large," it violated the GBL. *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y. 2d 330, 343-44 (1999) (internal citations omitted); *see also Wilner v. Allstate Ins. Co.*, 893 N.Y.S.2d 208, 215-16 (2d Dep't 2010).

III. <u>Ms. Scott's claims against Attorney Greenberg under the New York Judiciary Law are properly before this Court.</u>

Ms. Scott's claim pursuant to N.Y. Jud. Law § 487 against Attorney Greenberg for intentionally deceiving the court and Ms. Scott is properly before this Court. This statute specifically provides a right of action against an attorney who, as here, "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." Ms. Scott's § 487 claim against Attorney Greenberg was also not forfeited by not raising it in the previous debt collection action brought by Attorney Greenberg on behalf of Capital Discount. To support the claim that Ms. Scott waived her Judiciary Law claim, Attorney Greenberg relies exclusively on *All. Network, LLC v. Sidley Austin LLP*, 43 Misc. 3d 848, 858 (N.Y. Cty. Sup. Ct. 2014). However, Ms. Scott's claim is entirely distinguishable from *All. Network* because Ms. Scott is in no way attempting to collaterally attack the underlying state court judgment. In fact, the civil court action resolved in Ms. Scott's favor after the judgment was vacated and the debt collection dismissed. Am. Comp. ¶ 64.

The Southern District Court of New York found that a requirement to raise the claim in the action where the violation occurred would be inconsistent with the plain language of the statute. *See Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 261 (S.D.N.Y. 2012). New York courts have similarly held that claims under § 487 can be brought in a separate proceeding. *Melcher v. Greenberg Traurig LLP* 2015 N.Y. Misc. LEXIS 1720, *8-11; 2015 NY Slip Op 30855(U), (N.Y. Cty. Sup. Ct. 2015) (holding that where a § 487 claim is not a collateral attack on the judgment, a 487 claim may be brought separately, even when it could have been raised in the preceding case). Further, even if a party becomes aware of a potential claim pursuant to § 487 during the course of litigation, the courts do not mandate that a party immediately take that complaint to the presiding judge in that action. *Dupree v. Voorhees*, 24 Misc. 3d 396, 402 (Sup. Ct. Suffolk Cty. 2009) *aff'd as modified*, 68 A.D.3d 810 (2009). A new plenary action is barred "only if its essential purpose is to give that party a means to collaterally attack the judgment in the underlying action." *Id.* It is apparent that there is no attempt (or reason) to collaterally attack the previous judgment here, since Ms. Scott prevailed in the civil court action. Am. Comp. ¶ 64.

IV. <u>Ms. Scott has stated with particularity the sections of the contract left blank in violation of N.Y. Pers. Prop. § 402, establishing a claim under this section.</u>

Ms. Scott asserts violations pursuant to N.Y. Pers. Prop. § 402 against Defendants Maylah and Capital Discount. Both Maylah and Capital Discount contend that Ms. Scott failed to state a

claim under N.Y. Pers. Prop. § 402 because she did not specify which sections of the retail installment contract were left blank. As pleaded by the Amended Complaint, the most important terms of the retail installment contract such as the interest rate and amount of the monthly payments were the sections that were blank when Ms. Scott signed the contract. Am. Compl. ¶¶ 16, 27, 29. Section 402 (4) clearly provides that the only blank spaces that can be omitted and filled in after the buyer signs the contract are "identifying numbers or marks of the goods and the due date of the first instalment," and these omissions can occur only if the goods are delivered after the execution of the contract. Certainly, the interest rate and monthly payments are material omissions not permitted by the statute. *See also id.* § 402(3)(b)(1) (a contract shall contain all items required to be disclosed by the Truth in Lending Act, 15 U.S.C. § 1601 *et. seq.*).

Capital Discount's assertion that these material omissions are immaterial because the Contract contained a disclosure advising the buyer not to sign the agreement if it contains any blank spaces is irrelevant and belied by the plain language of the statute. Article 10 of the Retail Instalment Sales Act, N.Y. Pers. Prop. L. § 402(4) expressly states that "[n]o retail instalment credit agreement shall be signed by the buyer when it contains blank spaces to be filled in after it has been signed by the buyer." Article 10, § 414(2) provides that any person who violates the statute allows the buyer the right to recover from such person "an amount equal to the credit service charge or service charge imposed and the amount of any delinquency, collection, extension, deferral or refinance charge imposed." What is more, the Maylah salesperson actively misrepresented the nature of the contract to be signed, and told Ms. Scott that missing terms were immaterial as the document presented only gave him authority to look for financing on Ms. Scott's behalf.

Finally, Defendant Capital Discount's assertion that Ms. Scott's claim pursuant to N.Y. Pers. Prop. Law § 402(6-a) should fail because § 402 prohibits the inclusion of attorney's fees and Ms. Scott admitted that the contract does not provide for attorney's fees misconstrues Ms. Scott's claim. Defendants did not include a claim for attorney's fees because they were prohibited by law from doing so. Despite this, Capital Discount and its attorney still tried to collect attorney's fees from Ms. Scott even though the parties knew it was expressly prohibited by law to collect such fees. Am. Compl. ¶¶ 57-58.

Conclusion:

Based on the foregoing, Ms. Scott has amply stated timely claims against all parties.

Respectfully Submitted,

/s/ Shanna Tallarico

Cc:     All Counsel of Record (via CM/ECF)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically on December 3, 2015. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Dated: December 3, 2015                              /s/ Shanna Tallarico
                                                     Shanna Tallarico