UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

DAPHNEY SCOTT,

                              Plaintiff,                **MEMORANDUM & ORDER**
                                                            15-CV-05527 (MKB)

          v.

E. HOPE GREENBERG, CAPITOL DISCOUNT
CORP. and MYLAH FURNITURE Inc. *also known
as* MAYLAH FURNITURE,

                                Defendants.

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Daphney Scott commenced this action on September 23, 2015, against

Defendants E. Hope Greenberg, Capitol Discount Corporation ("Capitol Discount") and Mylah

Furniture Inc., also known as Maylah Furniture ("Mylah Furniture"), alleging misleading and

abusive business and debt collection practices in violation of the Fair Debt Collection Practices

Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*, New York Judiciary Law section 487, New York

General Business Law section 349, and New York Personal Property Law section 402. (Compl.,

Docket Entry No. 1.) Plaintiff's allegations arise from a retail installment contract Plaintiff

executed with Mylah Furniture that was later assigned to and enforced by Greenberg, an

attorney, through a collection proceeding on behalf of Capitol Discount. In an Amended

Complaint filed on October 8, 2015, Plaintiff alleges that Greenberg violated the FDCPA and

Judiciary Law section 487, that each Defendant violated General Business Law section 349, and

that Mylah Furniture and Capitol Discount violated Personal Property Law section 402. (Am.

Compl. ¶¶ 69–106, Docket Entry No. 4.)

Defendants move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Greenberg Mot. to Dismiss, Docket Entry No. 33; Capitol Discount Mot. to Dismiss, Docket Entry No. 34; Mylah Furniture Mot. to Dismiss, Docket Entry No. 37.) For the reasons discussed below, the Court (1) grants in part and denies in part Greenberg's motion to dismiss Plaintiff's FDCPA claims, (2) denies Greenberg's motion to dismiss Plaintiff's state law claims, and (3) grants Mylah Furniture's and Capitol Discount's motions to dismiss. Plaintiff is granted leave to amend her General Business Law section 349 and Personal Property Law section 402(4) claims against Mylah Furniture and Capitol Discount.

## I. Background

### a. Contract execution

On or around September 25, 2012, Plaintiff visited Mylah Furniture to purchase several items of furniture.[1] (Am. Compl. ¶ 12.) A store clerk at Mylah Furniture told Plaintiff that she could not purchase items on lay-a-way but that a furniture purchase could be financed. (*Id.* ¶ 12.) Plaintiff gave the clerk a few recent paystubs but did not authorize the clerk to check her credit. (*Id.* ¶ 13.) After a short time, the clerk informed Plaintiff that she had been denied financing from several financing companies. (*Id.*) Plaintiff identified the furniture items she wished to purchase and planned to return later in the day to purchase the items, but the clerk told Plaintiff that she could sign a document before leaving so that the clerk could continue to search for financing for Plaintiff's purchase. (*Id.* ¶ 14.) Plaintiff signed the document, which contained "blank portions." (*Id.* ¶ 15.) Plaintiff asked why the document contained "blank portions," and

---

[1] The facts as alleged in the Amended Complaint are accepted as true for the purposes of deciding these motions.

the clerk told her that the blanks had no significance and would be filled in after financing was secured for the purchase.  (*Id*. ¶ 16.)  The clerk assured Plaintiff that her signature on the document only authorized him to search for financing.  (*Id*. ¶ 16.)  Plaintiff told the clerk that she could not afford a high interest rate or high monthly payments and that if he could not find an affordable deal, she did not wish to purchase the furniture on credit.  (*Id*. ¶ 17.)  The clerk assured Plaintiff that he would get her a "good deal."  (*Id*.)  Before leaving the store, Plaintiff paid a $50 deposit toward the total $3050 cost of the furniture.  (*Id*. ¶ 18.)  Several days later, the furniture was delivered to Plaintiff's home.  (*Id*. ¶ 19.)

In or around October of 2012, Plaintiff received a copy of the document she signed at Mylah Furniture with the blank portions completed.  (*Id*. ¶ 20.)  The document was titled "Security Agreement – Retail Installment Contract" (the "Contract").  (*Id*. ¶ 21.)  The Contract provided for a 24.9% interest rate and required Plaintiff to make thirty-six monthly payments of $119.18 beginning on October 25, 2012.  (*Id*. ¶¶ 22, 27.)  The Contract did not provide that Plaintiff was responsible for paying attorneys' fees in the event that there was an action to enforce the Contract.[2]  (*Id*. ¶ 24.)  Mylah Furniture was listed as the seller.  (*Id.* ¶ 21.)  The Contract included several notices, including that the Contract "may" be assigned to Capitol Discount and that the holder of the Contract is subject to all of the claims and defenses that the debtor could assert against the seller of the goods obtained pursuant to the Contract.  (*Id.* ¶ 27.)  After reviewing the Contract, Plaintiff called Mylah Furniture and asked if she could return the furniture because she did not agree with the high interest rate or high monthly payments.  (*Id*.

---

[2]  Plaintiff alleges "upon information and belief" that Capitol Discount did not provide for attorneys' fees in the Contract because it is prohibited from doing so under New York Personal Property Law section 402.  (Am. Compl. ¶ 25.)

¶ 29.)  Plaintiff was told that she was bound by the terms of the Contract regardless of whether she returned the furniture.  (*Id*.)  Plaintiff made payments pursuant to the Contract until July of 2013.  (*Id*. ¶ 32.)  After Plaintiff ceased making payments, Capitol Discount began to call Plaintiff's cellular and home telephones approximately every other day.  (*Id*.)

### b.  Collection action

On January 7, 2014, Greenberg, representing Capitol Discount, initiated an action against Plaintiff in Civil Court, Kings County to collect the remaining debt owed pursuant to the Contract.[3]  (*Id*. ¶ 33.)  Plaintiff was never served with the summons and complaint.  (*Id*. ¶ 36.)  Plaintiff became aware of the collection action in or around February of 2014, when she received a summons in the mail from Greenberg on behalf of Capitol Discount, indicating that Capitol Discount was seeking a judgment of $2561.65 plus interest from July 5, 2013, as well as the costs associated with bringing the action.  (*Id*. ¶¶ 35, 38.)  The summons did not list a date for Plaintiff to appear in court.  (*Id*. ¶ 40.)

Around the time Plaintiff received the summons, Plaintiff called Greenberg using the telephone number listed on the summons to clarify the information included in the summons.[4]  (*Id*. ¶ 38.)  Plaintiff spoke with a "Mr. Russel," whom Plaintiff understood to be acting on Greenberg's behalf and to have the authority to resolve Plaintiff's debt.  (*Id*. ¶¶ 38–39, 44.)  Russel explained that Plaintiff owed an additional $800 in interest and fees that was not indicated on the face of the summons.  (*Id*. ¶¶ 42–43.)  Plaintiff and Russel negotiated a settlement in

---

[3]  Plaintiff alleges that Greenberg "has filed thousands of lawsuits on behalf [of] putative creditors for the collection of consumer debts including furniture purchases, car loans, and putative credit card accounts."  (Am. Compl. ¶ 7.)

[4]  Later in the Amended Complaint, Plaintiff alleges that the telephone call with Greenberg occurred "in or around January 2014," (Am. Compl. ¶ 60), indicating that Plaintiff may have reviewed the summons in January of 2014 and not February of 2014.

which Plaintiff agreed to pay the amount listed on the summons, totaling $2561.65, in monthly payments of between $100 and $150. (*Id*. ¶ 44.) Russel told Plaintiff that she "did not need to go to court as long as she continued to pay Capitol Discount." (*Id*. ¶ 41.) Plaintiff began to make payments to Capitol Discount, paying $100 in January and February of 2014, $500 in March of 2014 and $150 in April of 2014. (*Id*. ¶ 47.) In reliance on Russel's statements, Plaintiff did not appear in court or file an answer in the collection action. (*Id*. ¶ 46.)

On April 28, 2014, Greenberg obtained a default judgment against Plaintiff in the amount of $3311.88. (*Id*. ¶ 49.) The default judgment did not account for the $850 in payments Plaintiff made to Capitol Discount between January and April of 2014. (*Id*. ¶ 50.) According to the affidavit of service submitted by Greenberg in support of the default judgment, the summons and complaint in the collection action were served on February 12, 2014 at 4:41 PM on "Jane Doe," who was described as "40 years old, around 5 [feet and] 6 [inches], 180 [pounds], with black hair and skin." (*Id*. ¶ 53.) Plaintiff alleges that the description "does not meet the description of [Plaintiff] or anyone who lived with [Plaintiff] at the time of [the] alleged service." (*Id*. ¶¶ 53–54.)

Plaintiff first learned of the default judgment in February of 2015, when Plaintiff's employer received an income execution. (*Id*. ¶¶ 48, 56, 58–59.) By letter dated February 23, 2015, Capitol Discount notified Plaintiff that $160 of the amount Plaintiff owed was for "legal costs." (*Id*. ¶ 57.) Plaintiff continued to make payments to Capitol Discount after learning of the default judgment, including $100 payments in March, April and May of 2015 and a $500 payment in April of 2015. (*Id*. ¶ 61.)

On June 16, 2015, Plaintiff moved to vacate the default judgment in the collection action. (*Id*. ¶ 62.) Plaintiff argued that the judgment should be vacated and dismissed because she was

not properly served with process and the court lacked personal jurisdiction; or alternatively, that the judgment should be vacated and the action restored to the trial calendar because she had a reasonable excuse for not answering the complaint and had meritorious defenses to the collection action. (*Id.* ¶ 62.) On June 30, 2015, the Civil Court, Kings County granted Plaintiff's request for relief from the default judgment and dismissed the case. (*Id.* ¶ 64.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Concord Assocs., L.P. v. Entm't Prop. Trust*, 817 F.3d 46, 52 (2d Cir. 2016) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015) (quoting *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997)). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. While "the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a

statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Deswal v. U.S. Nat. Ass'n*, 603 F. App'x 22, 23–24 (2d Cir. 2015) (quoting *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014)).

   **b.  FDCPA claims – Greenberg**

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692e); *see also Benzemann v. Citibank, N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) ("The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" (quoting *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002))).  "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Benzemann*, 806 F.3d at 100 (citing 15 U.S.C. § 1692k).

To establish a violation under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, (2) the defendant collecting the debt [must be] considered a 'debt collector,' and (3) the defendant [must ha[ve] engaged in an[] act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc. (Polanco III)*, 132 F. Supp. 3d 567, 578 (S.D.N.Y. 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[The FDCPA] grants a

private right of action to a consumer who receives a communication that violates the Act.").

Greenberg argues that all of Plaintiff's FDCPA claims are time-barred and certain allegations also fail to state a claim.  (Greenberg Mem. of Law in Supp. of Mot. to Dismiss, ("Greenberg Mem.") 9, 16, Docket Entry No. 31-1.)  Plaintiff argues that one of her FDCPA claims is timely and also argues that the statute of limitations on her remaining untimely claims should be equitably tolled.  (Pl. Opp'n to Defs. Mots. to Dismiss ("Pl. Opp'n") 11–14, Docket Entry No. 40.)  Plaintiff also asserts that she adequately states a claim for relief under sections 1692d, 1692e and 1692f of the FDCPA.

### i.    Plaintiff's FDCPA claims are untimely

Plaintiff concedes that the majority of her FDCPA claims are untimely[5] but argues that she alleges one timely FDCPA violation because, after Greenberg made the false representation to Plaintiff that she should not appear in court, Greenberg sent Plaintiff's employer the income execution in or around February of 2015.  (Am. Compl. ¶¶ 58, 70.c; Pl. Opp'n 11 (identifying "at least one FDCPA violation that occurred within the year prior to filing").)  Greenberg argues that the allegedly timely claim is time-barred because Plaintiff cannot "revive the statute of limitations by complaining about a later act in furtherance of the time-barred act with no separate

_____

[5]  Plaintiff concedes that the FDCPA claims based on the following allegations against Greenberg are untimely:  (1) falsely representing to Plaintiff that she did not need to appear in the collection proceeding or answer the complaint; (2) seeking a default judgment after making the false representation to Plaintiff; (3) requesting amounts not expressly authorized by agreement or law and falsely representing to Plaintiff that Greenberg was entitled to those fees; (4) unlawfully engaging in harassing, oppressive and abusive litigation conduct; and (5) filing a false affidavit of service in the collection proceeding claims.  (Pl. Opp'n 13.)  Plaintiff argues, however, that the statute of limitations for these claims should be equitably tolled.  (*Id.* ("The remaining violations that Ms. Scott has alleged from outside the one-year statute of limitations should likewise be considered timely for purposes of Defendants' motion, because they are entitled to equitable tolling . . . .").)

violation of the FDCPA," and the action Plaintiff complained of "does not constitute a violation

of the FDCPA." (Greenberg Mem. 9–10.) Because Plaintiff concedes that all but one of her

FDCPA claims are time-barred, the Court only considers the timeliness of the single claim that

Greenberg unlawfully enforced the default judgment by sending the income execution after

falsely representing to Plaintiff that she did not need to appear in court.[6]

Claims under the FDCPA must be commenced "within one year from the date on which

the violation occurs." 15 U.S.C. § 1692k; *see Benzemann*, 806 F.3d at 99 ("[T]he [FDCPA]

statute of limitations . . . provides that FDCPA plaintiffs must file suit 'within one year from the

date on which the violation occurs.'" (quoting 15 U.S.C. § 1692k(d))). A cause of action accrues

under the FDCPA when "injury occurs" and "the injured party has the right to bring suit for all

of the damages . . . caused by the defendant's acts." *Benzemann*, 806 F.3d at 101 (quoting

*Leonhard v. United States*, 633 F.2d 599, 613 (2d Cir. 1980)). In the case of multiple allegations

of FDCPA violations, some occurring before and others occurring after the statute of limitations

has expired, a court must determine if the non-time-barred allegations are new and independent

FDCPA violations. *See, e.g.*, *Puglisi v. Debt Recovery Sols., LLC*, No. 08–CV–5024, 2010 WL

376628, at *3 (E.D.N.Y. Jan. 26, 2010) (allowing claims based on "separate, discrete violations"

that were within the statute of limitations period to go forward but barring claims for allegations

that occurred outside of the statute of limitations period); *Ehrich v. RJM Acquisitions, LLC*, No.

09-CV-2696, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009) ("[S]eparate communications

that violate the FDCPA can create separate causes of action."). If a plaintiff could rely on a

time-barred act to restart the statute of limitations, a plaintiff's "cause of action could be kept

---

[6] The Court addresses Plaintiff's equitable tolling arguments as to her untimely claims
below.

alive indefinitely because each new communication would start a fresh statute of limitations." *Sierra v. Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999) (finding that the filing of a summons and complaint seeking "unfair and illegal" attorneys' fees did not revive the statute of limitations on the claim that the prior pursuit of attorneys' fees outside of litigation violated the FDCPA); *see also Oliver v. U.S. Bancorp*, No. 14-CV-8948, 2015 WL 4111908, at *2 (S.D.N.Y. July 8, 2015) (finding that untimely FDCPA claim based on false representations made in the complaint in a foreclosure action was not revived by subsequent identical false representations in a state court filing); *DeJesus v. BAC Home Loans Servicing, LP*, No. 13-CV-2864, 2014 WL 4804999, at *4–5 (E.D.N.Y. Sept. 26, 2014) (noting that "[t]he established law in this Circuit does not support" extension of the FDCPA statute of limitations where "plaintiffs have not alleged any specific violations by defendants within the one-year statutory period").

Here, Plaintiff filed suit on September 23, 2015. (*See* Compl.) Thus, only acts that accrued on or after September 23, 2014 are timely. Although Plaintiff's claim is predicated on an income execution that took place in February of 2015, Plaintiff is alleging that because Russel, on behalf of Greenberg, lied to her in February of 2014, Plaintiff did not appear in the action, and therefore the subsequent enforcement of the default judgment through the income execution violates the FDCPA. (Am. Compl. ¶ 70.c.) As pled, Plaintiff does not allege that the income execution, in and of itself, or Greenberg's utilization of judgment collection remedies violates the FDCPA. *Cf. McCrobie v. Palisades Acquisition XVI, LLC*, No. 15-CV-18, 2016 WL 1178584, at *4 (W.D.N.Y. Mar. 25, 2016) (finding that an FDCPA claim based on sending an income execution without the proper assignment of interest did not accrue until the income execution was either signed or received by the plaintiff because the basis of the plaintiff's cause of action was that "defendants pursued state law post-judgment remedies to enforce the default

judgment without authorization to do so"), *reversed on other grounds*, 664 F. App'x 81 (2d Cir. 2016).

Rather, the only alleged FDCPA violation as to the income execution — the misrepresentation by Russel — occurred outside of the statute of limitations and, accordingly, Plaintiff's claim is not timely. *See Schuh v. Druckman & Sinel*, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) (noting in dicta that a plaintiff may not "revive the statute of limitations period by complaining about a later act in furtherance of the time-barred act . . . [where] there was no separate violation of the FDCPA"); *see also Oliver*, 2015 WL 4111908, at *3 (finding that a submission for fraudulently sought fees does not "restart the statute of limitations" on a FDCPA claim where the request for fraudulently sought fees initially occurred outside of the statute of limitations and no new misrepresentation was alleged in the court submission seeking the same fees); *Calka v. Kucker, Kraus & Bruh, LLP*, No. 98-CV-0990, 1998 WL 437151, at *3 (S.D.N.Y. Aug. 3, 1998) (refusing to recognize the filing of an amended complaint and motion for summary judgment as new FDCPA violations where neither contained "any new misrepresentations of the amount due not in the original complaint").

Stated differently, Plaintiff cannot rely on distinct dates of accrual[7] for the same unrepeated fraudulent conduct — the misrepresentation by Russel — in order to bring the otherwise time-barred false statement within the statute of limitations by arguing that the fraud carries through to the income execution. *Cf. Ellis v. Gen. Revenue Corp.*, 274 F.R.D. 53, 58 (D.

---

[7] The alleged misrepresentation occurred outside of the statute of limitations period, in February of 2014, when Plaintiff spoke with Russel over the telephone. (Am. Compl. ¶ 41.) The Amended Complaint separately asserts that the February of 2014 misrepresentation over the telephone is an independent violation of the FDCPA as well as the basis of another of Plaintiff's FDCPA claims, (*id.* ¶¶ 70.a, 70.b), both of which Plaintiff concedes occurred outside of the statute of limitations. (Pl. Opp'n 13.)

Conn. 2011) (explaining that multiple letters sent within the statute of limitations period all including the same false information were sufficiently "new, discrete misrepresentations" because "[a]ny one of these duplicate letters, if signed and returned by [the plaintiffs], would have memorialized an agreement based on allegedly false information"); *Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp. 2d 568, 571 (S.D.N.Y. 2011) (finding a timely FDCPA claim regarding a sewer service scheme because "defendants have continued to affirmatively assert the veracity of the [ ] affidavits in the course of enforcing the default judgments").

To the extent that Plaintiff is arguing that enforcement of a fraudulently obtained default judgment is an independent FDCPA violation, the authority on which Plaintiff relies does not support her argument. Plaintiff primarily relies on the adjudication of a motion for judgment on the pleadings in *Polanco v. NCO Portfolio Management., Inc. (Polanco I)*, 930 F. Supp. 2d 547, 552 (S.D.N.Y. 2013). (Pl. Opp'n 11–12, 13.) However, *Polanco I* does not hold that enforcement of a fraudulently obtained default judgment is an independent FDCPA violation and it is factually distinguishable.

*Polanco I* involved allegations that the defendant pursued a collection lawsuit without serving the plaintiff with process, subsequently obtained default judgment, garnished the plaintiff's wages in satisfaction of the judgment and then failed to return the garnished wages pursuant to a court order. *Polanco I*, 930 F. Supp. 2d at 548–49. Based on these facts, the court considered the defendant's motion for judgment on the pleadings, which argued that the FDCPA does not apply to a debt collector's refusal to comply with a court order. *Id.* The court articulated that the "crux of [the plaintiff's] claim is that [the defendant] fraudulently obtained [a] default judgment and then failed to comply with two [c]ourt [o]rders to return those improperly obtained funds." *Id.* at 549. The central focus of the court's analysis was whether, by failing to

comply with a court order, the defendant had engaged in conduct "in connection with the collection of a consumer debt." *Id*. at 551. The court concluded that the "[d]efendant's alleged actions of fraudulently using the court's power to secure a default judgment and subsequent garnishment and then refusing to promptly obey the court's orders to return the money, falls within the FDCPA's broad purpose to protect consumers from such alleged abusive and unfair tactics." *Id.* at 552.

*Polanco I* did not address whether lawful enforcement of a fraudulently obtained default judgment is itself an FDCPA violation *independent* of the fraudulently obtained default judgment. In addition, here there is no question that the actions Greenberg took were in connection with a consumer debt, and, unlike in *Polanco I*, where the defendant refused to return garnished wages as ordered by a court, there are no allegations that the income execution or its execution, in and of itself, violated a court order.[8]

Accordingly, Plaintiff has failed to show that enforcement of the default judgment

---

[8] Similarly, Plaintiff cites to *Okyere v. Palisades Collection, LLC* (*Okyere II*), 961 F. Supp. 2d 522, 530 (S.D.N.Y. 2013), as further support that enforcement of a fraudulently obtained default judgment is a violation of the FDCPA. However, in *Okyere II*, and unlike the situation here, the court found that removing money from a bank in violation of a court order and refusing to return the funds removed in violation of that court order sufficiently stated a claim under section 1692f. The other cases Plaintiff cites do not address whether a time-barred fraudulent action can be the sole basis for liability for a timely action that does not in and of itself violate the FDCPA. (Pl. Opp'n 12 (first citing *Heintz v. Jenkins*, 514 U.S. 291, 294–95 (1995) (holding that the FDCPA applies to a lawyer who tries to collect consumer debts through litigation); then citing *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 228–29 (4th Cir. 2007) (finding no immunity for a law firm under the FDCPA); and then citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 952 (9th Cir. 2011) (finding that requests for admission that asked a consumer to admit false statements related to his debt violated the FDCPA)).)

through the income execution violates the FDCPA[9] and, therefore, Plaintiff's FDCPA claim is

untimely.  Because the Court finds that this claim is untimely and Plaintiff concedes that all of

her other FDCPA claims are untimely, the Court next determines whether the statute of

limitations for Plaintiff's claims should be tolled.

### ii.    Plaintiff is entitled to equitable tolling

Plaintiff argues that the statute of limitations on her untimely FDCPA claims should be

equitably tolled because Greenberg fraudulently concealed Plaintiff's cause of action.  (Pl. Opp'n

13–14.)  Greenberg argues that equitable tolling is inappropriate because Plaintiff was aware of

the commencement of the collection action as early as February of 2014, unreasonably relied

upon Russel's statements, and did not exercise due diligence.  (Greenberg Reply Mem. 5–7,

Docket Entry No. 33.)

The Second Circuit has not directly addressed whether FDCPA claims can be equitably

tolled, but district courts have applied the equitable tolling doctrine in FDCPA cases.  *See, e.g.*,

*Vincent v. Money Store*, 304 F.R.D. 446, 456 n.4 (S.D.N.Y. 2015); *Coble*, 824 F. Supp. 2d at

571; *Sykes v. Mel Harris and Assocs. LLC*, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010).  Where

the decision of whether to toll a plaintiff's claims depends on "fact-specific" issues, it should not

be resolved on a motion to dismiss.  *Mandarino v. Mandarino*, 180 F. App'x 258, 261 (2d Cir.

2006).  However, where the facts that establish tolling are present on the face of the complaint,

equitable tolling may be determined on a motion to dismiss.  *See Singh v. Wells*, 445 F. App'x

---

[9]  The cases cited by Plaintiff for the proposition that "[a]n FDCPA claim is timely where
the date of the last alleged FDCPA violation falls within the statutory period" do not apply here
because Plaintiff does not allege an FDCPA violation within the statute of limitations period.
(Pl. Opp'n 11 (first citing *Kapsis v. Am. Home Mortgage Servs. Inc.*, 923 F. Supp. 430, 443
(E.D.N.Y. 2013); and then citing *Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp. 2d 264,
273 (S.D.N.Y. 2001)).)

373, 378 (2d Cir. 2011); *Marvel Worldwide, Inc. v. Kirby*, 756 F. Supp. 2d 461, 472–73 (S.D.N.Y. 2010) (dismissing claims as untimely on a motion to dismiss because equitable tolling was not merited by "look[ing] to the pleading and what it does (and does not) allege").

"To qualify for equitable tolling, a plaintiff must show '(1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstance stood in [the] way' of [] bringing a lawsuit." *Ellul*, 774 F.3d at 801 (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)). A plaintiff who has been "induced by fraud, misrepresentations or deception to refrain from filing a timely action" may invoke the doctrine of equitable tolling. *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) (citation and internal quotation marks omitted); *see also Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (citing *Abbas*, 480 F.3d at 642).

A statute of limitations may be tolled for fraudulent concealment if a plaintiff can establish that: "(1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's 'discovery of the nature of the claim within the limitations period;' and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled." *Koch*, 699 F.3d at 157 (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)). A plaintiff must allege that the defendant "took affirmative steps to prevent the plaintiff's discovery of his claim or injury or that the wrong itself was of such a nature as to be self-concealing." *Singh*, 445 F. App'x at 378 (quoting *New York v. Hendrickson Bros., Inc.*, 840 F.2d 1065, 1083 (2d Cir. 1988)); *Vincent*, 304 F.R.D. at 458 ("Generally, for equitable tolling to apply due to the defendant's misleading conduct, the plaintiff must show that the defendant took affirmative steps beyond the allegedly wrongful activity itself to conceal her activity from the plaintiff. In some cases, however, the

plaintiff may be able to prove this element by showing that the wrong itself was of such a nature as to be self-concealing." (citations and internal quotation marks omitted)); *Coble*, 824 F. Supp. 2d at 571 ("The concealment element is met when plaintiffs show either that the affirmative acts of defendant prevented discovery of plaintiffs' claim or that the wrong itself was self-concealing." (citing *Hendrickson Bros., Inc.*, 840 F.2d at 1083)); *see also McAnaney v. Afstoria Fin. Corp.*, No. 04-CV-1101, 2008 WL 222524, at *7 (E.D.N.Y. Jan. 25, 2008) ("[I]f the very nondisclosure or misrepresentation that gave rise to the . . . violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified.").

Here, Plaintiff has adequately pled fraudulent concealment in support of equitable tolling. The allegations supporting equitable tolling describe a scheme orchestrated by Greenberg to obtain a default judgment by first failing to properly serve Plaintiff with process and then telling Plaintiff that she did not need to appear in the action provided she continued to make payments, despite Greenberg's intent to continue the proceedings.

As to the first two elements of fraudulent concealment, Plaintiff alleges that Greenberg wrongfully concealed material facts when Russel told Plaintiff that she did not need to appear in the underlying collection action as long as she continued to make payments to Capitol Discount. (Am. Compl. ¶ 41.) Plaintiff alleges that the concealment prevented her discovery of the claims because "[i]n reliance on Attorney Greenberg's office's representation, [Plaintiff] did not appear in court or file an answer," but instead made payments toward her debt and "understood that Capitol Discount and Attorney Greenberg were not pursuing the court case because Mr. Russel told her that they would not do so as long as she paid." (*Id*. ¶¶ 46–48; Pl. Opp'n 14 (citing Am. Compl. ¶¶ 41, 44, 46, 56, 58–59, 63).) Plaintiff did not learn about the default judgment until in or around February of 2015, (Am. Compl. ¶ 59), and she commenced the instant action

approximately six months later, on September 23, 2015.  (*Cf.* Greenberg Mem. 12 (citing *Snyder v. U.S. Equities Corp.*, No 12-CV-6092, 2014 WL 317189, at \*5 (W.D.N.Y. Jan. 28, 2014) (refusing equitable tolling to a plaintiff who learned of the judgment against her for a debt she did not owe, quickly retained an attorney and did not commence an action until one year later)).)

Because the same misrepresentation by Russel is the basis for three of Plaintiff's FDCPA claims, (Am. Compl. ¶¶ 70.a, 70.b, 70.c), the representation must be "self-concealing" in order to qualify as an affirmative act of concealment for those three claims.  *See Vincent*, 304 F.R.D. at 458; *Coble*, 824 F. Supp. 2d at 571.  The misrepresentation here was "self-concealing" because Greenberg's misrepresentation was vital to Greenberg's scheme to keep Plaintiff from appearing in the action.  *See e.g.*, *Moll v. U.S. Life Title Ins. Co. of N.Y.*, 700 F. Supp. 1284, 1290 (S.D.N.Y. 1988) (describing that in the case of a defendant committing a self-concealing wrong, "[t]he deception is vital to his scheme, for without it he cannot accomplish his illicit purpose").

Moreover, in a similar case, *Sykes v. Mel Harris and Associates LLC*, a court found that the practice of filing false affidavits of service in pursuit of default judgments constituted self-concealing conduct that warranted equitable tolling.  *Sykes*, 757 F. Supp. 2d at 422 ("Because sewer service purposefully ensures that a party is never served, it is plausible that defendants' acts were 'of such character as to conceal [themselves]' to warrant equitable tolling." (citation and internal quotation marks omitted)).  Although the situation here differs slightly from that in *Sykes* because Plaintiff received notice of the collection action despite Greenberg's failure to serve her with process, Greenberg revived the concealment by telling Plaintiff that she did not need to appear in the action as long as she continued to pay Capitol Discount.  As to Plaintiff's claims not based on the misrepresentation by Russel, the misrepresentation was an independent affirmative act of concealment.  *See, e.g.*, *Coble*, 824 F. Supp. 2d at 571–72 (finding that re-

asserting the validity of known false affidavits of service in a court proceeding and continuing to pursue judgments based on those false affidavits qualified as affirmative acts concealing the plaintiff's FDCPA claims).

As to the final element of fraudulent concealment, Plaintiff alleges due diligence because, upon learning of the collection action when she received the summons in the mail, she called Greenberg to inquire about the action and subsequently made payments toward the debt in accordance with Greenberg's instructions.  (Am. Compl. ¶¶ 38, 47, 60.)  These allegations of diligence, although minor, separate this case from pleadings that fail to assert even a single act of diligence.[10]  *Cf. Conklin v. Maindenbaum*, No. 12-CV-2606, 2013 WL 4083279, at *7 (S.D.N.Y. Aug. 13, 2013) ("Here, the Amended Complaint is bereft of any facts that indicate that [the plaintiffs] conducted any efforts whatsoever to discover whether [the defendants] in fact violated the FDCPA, which renders the protection of equitable tolling unavailable to [the plaintiffs].");  *Wade v. Rosenthal, Stein & Assocs., LLC*, No. 11-CV-5672, 2012 WL 3764291, at *3 (E.D.N.Y. Aug. 29, 2012) (finding the plaintiff's failure to plead "any facts that he conducted any efforts

---

[10]  At this stage of the litigation, the Court declines to consider Defendants' challenge that Plaintiff unreasonably relied on Greenberg's statements and thus did not exercise due diligence in pursuing her rights because it is based on evidence outside of the Amended Complaint.  In response to Plaintiff's opposition to the motion to dismiss, Greenberg submitted a copy of an unsigned settlement agreement that was purportedly sent to Plaintiff after the February 2014 telephone call with Russel and urges the Court to consider the document as integral to the Amended Complaint.  The Court finds that the document is not integral to the Amended Complaint.  Plaintiff does not refer to a written settlement agreement anywhere in the Amended Complaint and instead refers to an oral settlement agreement reached over the telephone.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (holding that a document is integral to the complaint where the plaintiff (1) has "actual notice" of the document and its information and (2) has "relied upon the [] document [] in framing the complaint" (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991))).  Moreover, there is no indication that Plaintiff ever received or reviewed the unsigned settlement agreement or cover letter.  Accordingly, the Court declines to consider Greenberg's appended document because it is not properly before the Court on a motion to dismiss.

whatsoever to discover whether the letters violated the FDCPA" deprived him of the benefit of equitable tolling).

Thus, at this stage of the litigation, Plaintiff has adequately pled fraudulent concealment sufficient to toll the statute of limitations for her FDCPA claims. The Court therefore considers Greenberg's additional arguments that certain of Plaintiff's FDCPA allegations fail to state a claim for relief.

### iii. Plaintiff has stated an FDCPA claim under sections 1692e and 1692f but not under section 1692d

Plaintiff alleges violations of FDCPA sections 1692d, 1692e and 1692f. 15 U.S.C. §§ 1692d–f. Greenberg argues that Plaintiff fails to state FDCPA claims through her assertions, "wholly unsupported by any factual allegations," that Greenberg: (1) engaged in "harassing, oppressive, and abusive litigation conduct," (2) submitted a false affidavit of service, and (3) sought amounts from Plaintiff not expressly authorized by agreement or law and falsely represented to Plaintiff that Defendants were entitled to fees not authorized by agreement or law. (Greenberg Mem. 13–15.) Plaintiff does not specifically address Greenberg's arguments but cites to the allegations in the Amended Complaint in support of each of her FDCPA claims, noting, "[a]s pleaded, these all represent violations of the FDCPA." (Pl. Opp'n 13.) For the reasons explained below, the Court finds that Plaintiff has failed to state a claim under section 1692d but sufficiently states a claim under sections 1692e and 1692f.

### 1. Harassing, oppressive and abusive litigation conduct in violation of section 1692d

In paragraphs forty-nine and fifty of the Amended Complaint, which Plaintiff relies on in support of her claim that Greenberg engaged in harassing, oppressive and abusive litigation conduct, (Pl. Mem. 13), Plaintiff alleges that Greenberg entered the default judgment against Plaintiff and that the default judgment did not account for approximately $850 of payments

Plaintiff made to Capitol Discount. (Am. Compl. ¶¶ 49–50.) Throughout the Amended Complaint, Plaintiff includes allegations that Greenberg improperly pursued the default judgment because she did not serve Plaintiff with process and affirmatively misrepresented that Plaintiff did not need to appear in court so long as she continued to make payments to Capitol Discount. (*Id.* ¶¶ 36, 41, 48, 49–50.) Greenberg argues that Plaintiff does not identify any actions by Greenberg that violate section 1692d and instead only restates the language of the statute. (Greenberg Mem. 13.)

Section 1692d protects consumers against actions by debt collectors that "harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d (explicitly prohibiting conduct such as "use of threat of violence or other criminal means to harm the physical person, reputation, or property of any person"; "use of obscene or profane language"; "advertisement for sale of any debt to coerce payment of the debt"; "[c]ausing a telephone to ring or engag[ing] any person in telephone conversation repeatedly or continuously"); *Beider v. Retrieval Masterns Creditors Bureau, Inc.*, 146 F. Supp. 3d 465, 469 (E.D.N.Y. 2015) (indicating that section 1692d lists various examples of prohibited conduct but more inclusively prohibits conduct under its "general preface . . . prohibiting harassing, oppressive, and abusive conduct").

Here, Plaintiff's allegations that Greenberg obtained a default judgment despite Russel's representation that she would not and failed to credit Plaintiff for approximately $850 paid do not support a cause of action under section 1692d. Section 1692d focuses on harassing, oppressive and abusive *communications* with a debtor or to the public. *See, e.g.*, *Okyere v. Palisades Collection, LLC* (*Okyere I*), 961 F. Supp. 2d 508, 520 (S.D.N.Y. 2013) ("The examples given in the enumerated section of 1692d all consist of extrajudicial techniques of

harassment designed to humiliate or annoy a debtor. . . . Situations involving improper litigation conduct have been held to fall outside section 1692d." (collecting cases)); *cf. Beider*, 146 F. Supp. 3d at 469 (finding an adequately pled section 1692d violation under the statute's "general preface" where the plaintiff alleged that the defendants acted "by means of an objectionable and insulting letter sent to consumers," that "directs a series of abusive accusations to the recipients").

Neither Plaintiff's allegation that Greenberg pursued a default judgment despite Russel's representation to the contrary nor Plaintiff's allegation that Greenberg sought $850 in payments already made relate to a communication with Plaintiff or include harassing, oppressive or abusive characteristics.[11] *See, e.g.*, *Okyere I*, 961 F. Supp. 2d at 520–21 (finding that a claim for withholding money that a court had ordered be returned did not state a claim for relief under section 1692d). Nor do any other allegations in the Amended Complaint state a claim under section 1692d. Moreover, the thrust of Plaintiff's Amended Complaint — that Greenberg failed to communicate sufficiently with Plaintiff regarding the underlying collection proceeding — is the opposite of the conduct prohibited under section 1692d. As Greenberg argues, Plaintiff cannot rely on the language of the statute as the sole basis for her otherwise unsupported claim.[12]

---

[11] The allegation that Greenberg did not credit Plaintiff with approximately $850 in payments is also addressed under section 1692f below.

[12] Plaintiff also relies on *Polanco I* to support her argument that she has stated a section 1692d claim. (Pl. Mem. 13 (citing *Polanco v. NCO Portfolio Mgmt., Inc. (Polanco I)*, 930 F. Supp. 2d 547, 550 (S.D.N.Y. 2013).) However, the court in *Polanco I* seems to have relied on section 1692e rather than section 1692d. *Id.* at 550. In *Polanco I*, the court allowed claims under sections 1692d–f to proceed based on "sewer service practice, followed by obtaining a default judgment" and the refusal to promptly obey court orders requiring the return of garnished wages. *Polanco I*, 930 F. Supp. 2d at 550. The court in *Polanco I* did not specifically address how the alleged scheme violated section 1692d, and instead cited section 1692e in holding that the conduct "falls squarely within prohibited acts under the FDCPA." *See id.*

*Matson*, 631 F.3d at 63; (*see* Greenberg Mem. 13 (citing *Oliver*, 2015 WL 4111908, at *5)

(dismissing section 1692d claim that only "recite[d] the language of the statute without providing

any accompanying factual content that would allow the Court to draw the reasonable inference

that defendants are liable for the conduct alleged").).  Thus, Plaintiff fails to adequately plead a

violation of section 1692d.

### 2.    False affidavit of service in violation of section 1692e

Plaintiff alleges that the physical description included in the affidavit of service does not

match her own physical description or the description of anyone living with Plaintiff at the time

of the alleged service, therefore Greenberg filed a false affidavit of service with the court in

violation of the FDCPA.  (Am. Compl. ¶ 54.)  Greenberg argues that Plaintiff does not provide

any details about Plaintiff's physical description or how it differs from the purportedly false

description in the affidavit of service to overcome the presumed validity of the affidavit of

service.  (Greenberg Mem. 13–15.)

Section 1692e prohibits "false, deceptive, or misleading representations."  15 U.S.C.

§ 1692e; *see also Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993) ("The sixteen

subsections of [section] 1692e set forth a non-exhaustive list of practices that fall within [the ban

on false, deceptive, or misleading representations or means in connection with the collection of

any debt].").  The practice of "sewer service," which includes filing a false affidavit of service,

violates the FDCPA.  *See Sykes*, 757 F. Supp. 2d at 423 (finding an FDCPA violation where

process servers failed to serve process and then perjured affidavits of service); *see also Holmes v.*

*Elec. Document Processing, Inc.*, 966 F. Supp. 2d 925, 934–35 (N.D. Cal. 2013) ("As the same

factual allegations of 'sewer service' [including filing a false proof of service] discussed above

form the basis for Plaintiff's allegations of FDCPA violations, the Court finds that [the plaintiff]

has adequately alleged violations of the FDCPA on this basis."); *Freeman v. ABC Legal Servs.*

*Inc.*, 827 F. Supp. 1065, 1075-76 (N.D. Cal. 2011) (finding sewer-service allegations sufficient to allege an FDCPA claim under sections 1692d, 1692e, and 1692f (collecting cases)).

Here, when viewed in the light most favorable to the Plaintiff, the Amended Complaint states a claim under section 1692e because Plaintiff alleges that the physical description included in the affidavit of service does not match her own physical description or the description of anyone living with Plaintiff at the time of the alleged service. (Am. Compl. ¶ 54.) In addition, the default judgment was vacated and dismissed at least in part because Plaintiff alleges she was not properly served with process, providing further support for Plaintiff's claim that the affidavit was false. (*Id.* ¶¶ 62, 64). Greenberg relies on *Shetiwy v. Midland Credit Management*, 15 F. Supp. 3d 437 (S.D.N.Y. 2014), to support her argument that Plaintiff has not sufficiently alleged facts that the affidavit was false, but the Court finds *Shetiwy* factually distinguishable. (Greenberg Mem. 14.) In *Shetiwy*, the court held that the general allegations "that the Debt Buyers sent their attorneys into court with perjured documents and . . . falsely testified that they knew the contents of what they were presenting to the court when they had no knowledge of the papers that they were presenting to the court," lacked factual support and did not state a plausible claim under sections 1692e or 1692f of the FDCPA. 15 F. Supp. 3d at 446–47. Unlike in *Shetiwy*, the Amended Complaint alleges the details of the alleged falsity by including the physical description from the affidavit of service in the Amended Complaint. Thus, Plaintiff has adequately pled a violation of section 1692e.

### 3. Wrongfully sought fees and fraudulent representation in violation of section 1692f

Plaintiff alleges that Greenberg sought a default judgment and did not account for the approximately $850 in payments that Plaintiff made prior to entry of the default judgment. (Pl. Mem. 13 (citing Am. Compl. ¶¶ 50, 70.e–70.g).) Plaintiff also alleges that Greenberg "illegally

tried to collect attorneys' fees" by seeking $800 more in interest and fees than was included on the face of the summons.  (*Id.* (citing Am. Compl. ¶¶ 42–43, 70.d–70.e).)  Greenberg argues that Plaintiff does not identify the fees that were not authorized or any law or agreement that Greenberg violated.  (Greenberg Mem. 15.)

Section 1692f prohibits the use of "unfair or unconscionable means" to collect a debt.  15 U.S.C. § 1692f; *Rogers v. Capital One Servs.*, LLC, 447 F. App'x 246, 249 (2d Cir. 2011) (describing section 1692f as a "catchall provision prohibiting the use of any unfair or unconscionable means to collect or attempt to collect any debt" (citation and internal quotation marks omitted)); *Bank v. Cooper, Paroff, Cooper & Cook*, 356 F. App'x 509, 511 (2d Cir. 2009) (holding that both the collection and the attempted collection of a debt in violation of section 1692f violate the FDCPA); *Sutton v. Fin. Recovery Servs., Inc.*, 121 F. Supp. 3d 309, 314 (E.D.N.Y. 2015) (noting that in its prefatory clause, section 1692f prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt. . . . The list of [section] 1692f violations found in the subsections are nonexhaustive . . . ." (citation and internal quotation marks omitted)).

Here, Plaintiff states a violation of the FDCPA for Greenberg's pursuit of unlawful fees because she alleges that Greenberg sought "'legal costs,' i.e. attorney's fees."[13]  Plaintiff alleges

---

[13]  The Amended Complaint alleges that Greenberg sought "costs of the action," and later that Greenberg sought $160 in "'legal costs,' i.e. attorney's fees" of the outstanding amount due. (Am. Compl. ¶¶ 35, 42–43, 57.)  It is not clear that legal costs necessarily includes or is synonymous with "attorneys' fees," as Plaintiff presumes.  *See U.S. Fid. And Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 77 (2d Cir. 2004) (noting that "one of three standard dictionaries includes attorneys' fees in its definition of legal costs, while the others do not; and thus, these sources bring us no closer to resolving the disputed language").  However, because the representation of "legal costs" might imply to a layman the right to seek all legal costs associated with a proceeding, including attorneys' fees, the Court considers Plaintiff's allegations that Greenberg sought attorneys' fees adequately pled.  *See, e.g.*, *Samms v. Abrams,*

that Greenberg's request for attorneys' fees was unlawful because the Contract did not provide

for attorneys' fees.[14]  Although Plaintiff does not allege that there was no other basis for

attorneys' fees in the underlying action, the Court finds that the Amended Complaint sufficiently

states a plausible claim because attorneys' fees and costs are not generally permitted in breach of

contract actions or unjust enrichment actions absent a contractual agreement, statutory right or

court rule providing for such fees.[15]  *See, e.g., Samms v. Abrams, Fensterman, Fensterman,*

*Eisman, Formato, Ferrara & Wolfe, LLP*, 112 F. Supp. 3d 160, 164 (S.D.N.Y. 2015) (finding

that wrongful claim for attorneys' fees in a state court complaint violated section 1692e where

the plaintiff alleged there was no contractual right or other legal right to an award of attorneys'

fees "in actions sounding in unjust enrichment or quantum meruit generally"); *Hallmark v.*

*Cohen & Slamowitz*, 293 F.R.D. 410, 415 (W.D.N.Y. 2013) (finding the plaintiff stated an

---

*Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolfe, LLP*, 112 F. Supp. 3d 160, 164 (S.D.N.Y. 2015) (noting that when attorneys' fees were sought in a complaint, "an unsophisticated consumer reading the [s]tate [c]ourt [c]omplaint could be left with the false impression that [the plaintiff] was legally entitled to recover an award of attorneys' fees in addition to the amount of the debt allegedly owed").

[14]  Nor did the default judgment include attorneys' fees.  (Am. Compl. ¶ 51 ("The default judgment included the amount claimed in the complaint ($2562.65); interest at the rate of 24.9% from July 5, 2013 ($519.23); Cost by Statute ($20); Index Number fee ($45); Consumer Credit fee ($95); Service fee ($25); and an Enforcement fee ($45) for a total of $3311.99.").)

[15]  *See TAG 380, LLC v. ComMet 380, Inc.*, 10 N.Y.3d 507, 515–16 (2008) ("[G]enerally, in a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute or court rule . . . ." (citing *Hooper Assoc. v. AGS Computs.*, 74 N.Y.2d 487, 491 (1989))); *Samms*, 112 F. Supp. 3d at 164 (citing *Banco Popular N. Am. v. Lieberman*, 905 N.Y.S.2d 82, 84 (App. Div. 2010) (dismissing cause of action for attorneys' fees where claim sounded solely in unjust enrichment)).  Greenberg does not argue or cite any authority showing that she was entitled to an award of legal costs or attorneys' fees.

FDCPA violation under section 1692f where the defendant included a $140 court filing fee in a letter calculating the plaintiff's debt without any legal basis for the fee).

Similarly, Plaintiff's allegation that Greenberg sought fees already paid states a claim under the FDCPA because those fees were over and above Plaintiff's liability under the Contract. *See* 15 U.S.C. § 1692e(10) (explicitly prohibiting "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"); *see also Avila v. Riexinger & Assocs., LLC*, 644 F. App'x 19, 22–23 (2d Cir. 2016) (noting that section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law" (quoting 15 U.S.C. § 1692f(1))).

The Amended Complaint also sufficiently alleges that Greenberg fraudulently *misrepresented* her entitlement to moneys already paid by moving for the default judgment that failed to account for the $850 of payments Plaintiff made to Capitol Discount.[16] *See* 15 U.S.C. § 1692e(2)(A) (explicitly prohibiting "[t]he false representation of — (A) the character, amount, or legal status of any debt[]"); *see also Samms*, 112 F. Supp. 3d at 165 (finding that a representation to a court rather than the consumer debtor qualified as a violation under section 1692e(2)(A) and that the Second Circuit has expressly held that a court pleading is a

---

[16] Plaintiff does not argue that Greenberg's representation that she was seeking "legal costs" was a fraudulent representation in violation of the FDCPA. (*Compare* Pl. Mem 13 (citing ¶¶ 70.d–e as the FDCPA violations based on Greenberg "illegally" attempting to collect attorneys' fees from Plaintiff) *with* Am. Compl. ¶¶ 70.f ("Falsely representing to [Plaintiff] Defendants' entitlement to fees not authorized by agreement or by law").) In fact, Plaintiff alleges that Russel's initial representation in February of 2014 that Plaintiff owed an additional $800 in interest and fees, and not the letter Plaintiff received on February 23, 2015 that explicitly sought "legal costs," (Am. Compl. ¶ 57), provides the basis for the claim that Greenberg wrongfully sought attorneys' fees, (Pl. Opp'n 13 (citing Am. Compl. ¶¶ 42–43)).

"communication" for FDCPA purposes (citing *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 170 (E.D.N.Y. 2013) (citing *Goldman v. Cohen*, 445 F.3d 152 (2d Cir. 2006)))).

Thus, Plaintiff has failed to state a claim for a violation of section 1692d, and the Court grants Greenberg's motion to dismiss that claim. However, Plaintiff has adequately stated a claim for relief under sections 1692e and 1692f, based on her allegations that Greenberg: (1) filed a false affidavit of service, (2) sought $850 in payments Plaintiff had already made when seeking the default judgment and (3) illegally sought attorneys' fees. Accordingly, the Court denies Greenberg's motion to dismiss Plaintiff's FDCPA claims for failure to state a claim based on those allegations. The allegations that Greenberg did not seek to dismiss for failure to state a claim also survive, except that Plaintiff's claim regarding the income execution is not an independent FDCPA violation as discussed above in section II.b.i.

### c. New York Judiciary Law section 487 claim – Greenberg

Plaintiff alleges that the same conduct that is the basis of her FDCPA claims also supports her Judiciary Law section 487 claim that Greenberg intentionally deceived her in pursuit of a default judgment. (Pl. Mem. 20–21.) Greenberg argues that Plaintiff's allegations are "conclusory" and that Plaintiff fails to allege "intentional egregious misconduct." (Greenberg Mem. 20–21; Greenberg Reply 8–10.)

Judiciary Law section 487 permits a civil cause of action against an attorney who is:

> guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party . . . [i]s guilty of a misdemeanor, and in addition to the punishment prescribed therefor by the penal law, he forfeits to the party injured treble damages, to be recovered in a civil action.

*Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008) (quoting N.Y. Jud. Law § 487). Judiciary Law section 487 only provides a cause of action against an attorney who engages in deceit or collusion that is directed at a court or occurs "during the course of a pending judicial

proceeding." *Polanco v. NCO Portfolio Mgmt. Inc. (Polanco II)*, 23 F. Supp. 3d 363, 375 (S.D.N.Y. 2014) (citations omitted) (collecting cases). This limitation covers any statements related to an ongoing proceeding such that the statements "need not occur during a physical appearance in court," and may instead take place during "any oral or written statement related to a proceeding and communicated to a court or party with the intent to deceive." *Id.* (citing *Amalfitano*, 533 F.3d at 123). "A violation of Judiciary Law [section] 487 requires an intent to deceive." *Samms*, 112 F. Supp. 3d at 167 (quoting *Moormann v. Perini & Hoerger*, 886 N.Y.S.2d 49, 50 (App. Div. 2009)).

As an initial matter, it is unclear whether conduct must be "egregious"[17] in order to violate Judiciary Law section 487. *See Ray v. Watnick*, 182 F. Supp. 3d 23, 28–32 (S.D.N.Y. 2016) (explaining that the New York Court of Appeals has not determined whether the heightened "egregious" standard applies and that "New York's intermediate appellate courts

---

[17] Similarly, although it is not addressed by Greenberg, there is disagreement among courts as to whether a plaintiff must allege a "chronic, extreme pattern" to state a Judiciary Law section 487 claim. *See SGM Holdings LLC v. Andrews*, No. 15-CV-8142, 2017 WL 151634, at *1 (S.D.N.Y. Jan. 12, 2017) (citing *Amalfitano v. Rosenberg*, 533 F.3d 117, 123 (2d Cir. 2008)); *see also Ray v. Watnick*, 182 F. Supp. 3d 23, 30 (S.D.N.Y. 2016) ("But even assuming *arguendo* that *Amalfitano* stands for the proposition that no "pattern" of deceitfulness or "chronic" deceit is necessary to state a claim under [section] 487, *Amalfitano* does not erase the requirement — elaborated in numerous New York state cases — that a deceitful statement actionable under this statute be "extreme" or "egregious." *Amalfitano,* at most, stands for the proposition that a single deceitful statement can trigger [section] 487 liability." (citations omitted)); *Dupree v. Voorhees*, 959 N.Y.S.2d 235, 913 (App. Div. 2013) ("To the limited extent that decisions of this Court have recognized an alternative predicate for liability under Judiciary Law [section] 487 based upon an attorney's "chronic, extreme pattern of legal delinquency" they should not be followed, as the only liability standard recognized in Judiciary Law [section] 487 is that of an intent to deceive." (citations and internal quotation marks omitted)). Because the Second Circuit has not expressly held that a plaintiff must allege a "chronic, extreme pattern," and Greenberg does not challenge the dispute among lower courts' interpretations of *Amalfitano*, the Court does not address it.

have arguably taken differing positions on the standards for [section] 487 claims" (collecting cases)); *see also Sykes*, 757 F. Supp. 2d at 428–29 (finding scheme to obtain default judgment in violation of section 487 but making no mention of the "egregious misconduct" standard).

Regardless, the Court finds that the conduct, as alleged, is intentional and "egregious." The gravamen of Plaintiff's Judiciary Law section 487 claim is that Greenberg orchestrated a scheme to obtain a default judgment by telling Plaintiff that she did not need to appear in the action provided she continued to make payments, and then continued the court proceeding despite Plaintiff's payments and obtained a default judgment. Accepting Plaintiff's allegations as true, they plausibly state that Greenberg intentionally deceived Plaintiff and the court.[18] The Court sees no meaningful distinction between the core of Plaintiff's allegations in the Amended Complaint and those held sufficient to state a Judiciary Law section 487 claim in *Sykes*, where the defendants intentionally filed fraudulent affidavits of service to obtain default judgments.[19]

---

[18] Greenberg also argues that Russel's misrepresentation cannot be a basis of the Judiciary Law section 487 violation because section 487 is "limited to actions by an attorney acting in his or her capacity as an attorney," and Plaintiff does not allege that attorney Greenberg made a misrepresentation or that Russel is an attorney. (Greenberg Reply Mem. 9.) While Judiciary Law section 487 legislates the conduct of attorneys by its own language, the Court declines to dismiss Plaintiff's section 487 claim on this basis because Plaintiff does not state Russel's occupation and Greenberg does not provide authority that an attorney cannot be held liable under Judiciary Law section 487 for the misrepresentations of a non-attorney employee whom she supervises. Moreover, even without the misrepresentation, Plaintiff has sufficiently alleged that Greenberg engaged in intentional deceitful conduct by failing to serve her with process, filing a false affidavit of service in support of a default judgment, pursuing the default judgment without serving Plaintiff with process, and seeking fees not authorized by law or agreement.

[19] However, the allegation that Greenberg sent the income execution after obtaining judgment cannot be the basis for a Judiciary Law section 487 claim because it did not occur during a pending judicial proceeding. *See, e.g.*, *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 641 (S.D.N.Y. 2013) (finding that sending an information subpoena and restraining notice to a bank in furtherance of collecting a judgment was not actionable under section 487 because the alleged violation did not occur during a pending judicial proceeding).

*See Sykes*, 757 F. Supp. 2d at 417, 428–29 (finding that the plaintiffs' provided adequate support for a section 487 claim where the plaintiffs alleged that the defendants conducted a scheme to obtain default judgments by "failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service"). Greenberg's conduct was well outside the bounds of "vigorous advocacy" and, as alleged, qualifies as "egregious misconduct." *Cf. O'Callaghan v. Sifre*, 537 F. Supp. 2d 594, 596 (S.D.N.Y. 2008) (explaining that limiting the reach of section 487 to "egregious misconduct . . . affords attorneys wide latitude in the course of litigation to engage in written and oral expression consistent with responsible, vigorous advocacy, thus excluding from liability statements to a court that fall 'well within the bounds of the adversarial proceeding'").

Thus, the Court denies Greenberg's motion to dismiss Plaintiff's Judiciary Law section 487 claim.

**d.    New York General Business Law section 349 claims – all Defendants**

Defendants argue that Plaintiff has not adequately alleged that each Defendant engaged in "consumer-oriented" conduct as required to state a claim under section 349 of New York's General Business Law. (Greenberg Mem. 17–18; Mylah Mem. of Law in Supp. of Mot. to Dismiss ("Mylah Mem.") 4, Docket Entry No. 37-7; Capitol Discount Mem. of Law in Supp. of Mot. to Dismiss ("Capitol Discount Mem.") 5–6, Docket Entry No. 34-1.) The Court separately addresses Plaintiff's allegations as to Greenberg and then Mylah Furniture and Capitol Discount below.

**i.    Requirements to state a claim under New York General Business Law section 349**

General Business Law section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen.

Bus. Law § 349.  To assert a claim under General Business Law section 349, "a plaintiff must

allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially

misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or

practice."  *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker,*

*Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)); *see Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d

Cir. 2000) (citing the elements for a prima facie case under General Business Law section 349).

A plaintiff must "demonstrate that the acts or practices have a broader impact on

consumers at large.  Private contract disputes, unique to the parties . . . would not fall within the

ambit of the statute."  *DiGangi v. Gov't Emp'rs Ins. Co.,* No. 13–CV–5627, 2014 WL 3644004,

at *6 (E.D.N.Y. July 22, 2014) (quoting *James v. Penguin Grp. (USA) Inc.,* No. 13–CV–2801,

2014 WL 1407697, at *9 (S.D.N.Y. Apr. 11, 2014)).  The requirement "may be satisfied by

showing that the conduct at issue 'potentially affect[s] similarly situated consumers,'" *see Sykes*

*v. Mel. S. Harris and Assocs. LLC*, 780 F.3d 70, 84 (2d Cir. 2015) (quoting *Wilson v. Nw. Mut.*

*Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010)), as the "consumer-oriented" requirement is construed

liberally, *see Aghaeepour v. N. Leasing Sys., Inc.*, No. 14-CV-5449, 2015 WL 7758894, at *14

(S.D.N.Y. Dec. 1, 2015) (citation omitted); *New York v. Feldman,* 210 F. Supp. 2d 294, 301

(S.D.N.Y. 2002).

A plaintiff does not need to "show that the defendant committed the complained-of acts

repeatedly — either to the same plaintiff or to other consumers — but instead must demonstrate

that the acts or practices have a broader impact on consumers at large."  *SQKFC, Inc. v. Bell Atl.*

*TriCon Leasing Corp.,* 84 F.3d 629, 636 (2d Cir. 1996) (quoting *Oswego Laborers' Local 214*

*Pension Fund v. Marine Midland Bank, N.A*., 85 N.Y.2d 20, 25 (1995))); *Oswego Laborers'*

*Local*, 85 N.Y.2d at 25–26 (holding that acts were consumer-oriented where the plaintiff alleged

he was treated as any other potential customer and the same acts could "potentially affect similarly situated consumers"). Likewise, "a plaintiff need not delay bringing his suit until a defendant's improper conduct harms other individuals as long as the conduct has the potential to affect similarly situated consumers." *Shostack v. Diller*, No. 15-CV-2255, 2015 WL 5535808, at *8 (S.D.N.Y. Sept. 16, 2015) (citation omitted) (finding consumer-oriented conduct based on allegations that "[t]hese actions were part of [the defendants'] ordinary course of business; the same or similar actions are potentially (and quite likely) directed toward numerous other consumers on a daily basis"), *report and recommendation adopted*, No. 15-CV-2255, 2016 WL 958687.

The repeated filing of fraudulent debt collection lawsuits against New York consumers qualifies as consumer-oriented conduct under General Business Law section 349. *See Aghaeepour*, 2015 WL 7758894, at *15 ("[T]he Southern District of New York has also held that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349." (collecting cases)); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) ("Defendants' deceptive conduct is consumer-oriented and harmful to the public interest in that consumers are forced to respond to the fraudulent lawsuits or else face the penalty of wrongful default judgments, garnished wages, restrained bank accounts and impaired credit opportunities."); *Midland Funding, LLC v. Giraldo*, 961 N.Y.S.2d 743, 752 (N.Y. Civ. Ct. 2013) (finding that allegations of "routine filing" of assigned debt lawsuits by plaintiff "despite a lack of crucial, legally admissible information" or "sufficient inquiry" into whether the claims are meritorious, together with allegations that the deceptive acts "affect[ed] the consuming public at large," raised issues beyond any "private contract disputes"). On the other hand, "[i]t is clear that filing an individual suit, unique to the parties thereto, does not

32

satisfy the consumer-oriented standard." *Aghaeepour*, 2015 WL 7758894, at *15; *see also*

*Samms*, 112 F. Supp. 3d at 167 (the prosecution of an individual lawsuit that "consisted of filing

a single complaint that suffered from various alleged deficiencies . . . was not commercial

activity directed at consumers generally, nor did it have any ramifications for the public at

large").

### ii.     Plaintiff adequately alleges consumer-oriented misconduct by Greenberg

Plaintiff alleges that "Greenberg has filed thousands of lawsuits on behalf [of] putative

creditors for the collection of consumer debts, including furniture purchases, car loans, and

putative credit card accounts," (Am. Compl. ¶ 7), and "[u]pon information and belief, Attorney

Greenberg has engaged in similar conduct as a standard business practice with a substantial

number of other New York consumer litigants who are sued by her office for putative consumer

debts," (*id*. ¶ 68).

Because Plaintiff alleges Greenberg has "filed thousands of lawsuits on behalf [of]

putative creditors for the collection of consumer debts," (*id*. ¶ 7), and describes a course of debt

collection by Greenberg that, when liberally construed, could be pursued against other

consumers, Plaintiff has stated a plausible claim that Greenberg engaged in consumer-oriented

misconduct.  *See Feldman,* 210 F. Supp. 2d at 301.  The court in *Aghaeepour*, concluded that the

alleged routine filling of fraudulent lawsuits in pursuit of default judgments was consumer-

oriented conduct because "these allegedly fraudulent practices are affecting more than just the

current [p]laintiffs, and it appears likely that the conduct [of filing fraudulent lawsuits and

obtaining default judgments] is a general practice that could affect additional consumers."

*Aghaeepour*, 2015 WL 7758894, at *15.  By contrast, the plaintiff in *Samms* alleged that the

defendant violated General Business Law section 349 by pursuing a lawsuit to collect a debt

33

owed to a nursing home in the wrong venue, seeking unwarranted attorneys' fees and misrepresenting the amount of debt owed. *Samms*, 112 F. Supp. 3d at 162–63. The court found that the alleged misconduct "affected only the parties to that particular lawsuit," and the allegations that defendant "filed suits against consumers other than [the plaintiff] demanding judgment that includes attorney's fees when the claims were limited to claims that did not allow for recovery of attorney's fees," were conclusory and did not establish consumer-oriented misconduct. *Id.* at 167.

On balance, the facts alleged here are more similar to the cases involving repeated filings than to the single-complaint cases, and the Court finds Plaintiff sufficiently pled consumer-oriented conduct as to Greenberg. Although Plaintiff does not allege that Greenberg repeatedly engages in filing fraudulent lawsuits, Greenberg's failure to serve Plaintiff, the subsequent misrepresentation about her obligation to appear in court and the pursuit of default judgment reflect the type of generic misconduct likely to affect future consumers whose debts Greenberg seeks to collect. Unlike the single-complaint situation in *Samms*, where the defendant-attorney pursued a one-time nursing home debt and only alleged negligent conduct, Greenberg allegedly regularly pursues consumer debts, and the conduct alleged here is of a nature that is likely to be repeated against future consumers. *See id.* at 162–63; *see also, e.g.*, *Phillips v. Better Homes Depot, Inc.*, No. 2-CV-1168, 2003 WL 25867736, at *21 (E.D.N.Y. Nov. 12, 2003) (discussing capability of repetition as a factor in determining whether conduct is consumer-oriented).

Greenberg's argument that Plaintiff's claim cannot go forward based on allegations made "upon information and belief" is unpersuasive. (*See* Greenberg Mem. 18.)[20] "When a plaintiff

---

[20] Greenberg's reliance on *Tinlee Enterprises, Inc. v. Aetna Casualty & Surety Company*, 834 F. Supp. 605, 610 (E.D.N.Y. 1993), is also unpersuasive. In *Tinlee*, the court granted a

sets out allegations on information and belief, [s]he is representing that [s]he has a good-faith

reason for believing what [s]he is saying, but acknowledging that h[er] allegations are based on

secondhand information that [she] believes to be true." *Pirelli Armstrong Tire Corp. Retiree

Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (alteration in original)

(citation and internal quotation marks omitted). The Second Circuit has explained that the

"*Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon

information and belief where the facts are peculiarly within the possession and control of the

defendant." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Whether

Greenberg has engaged in similar schemes to obtain default judgments is information within

Greenberg's sole possession and control. Only if a consumer debtor later successfully

challenged a default judgment obtained by such practices would the details of Greenberg's

conduct be available to Plaintiff. As discussed above, Plaintiff only needs to plead a plausible

claim that Greenberg's misconduct "potentially affects similarly situated consumers."

*See SQKFC, Inc.*, 84 F.3d at 636 (alteration, citations and internal quotation marks omitted).

Moreover, the allegations here — that Greenberg files thousands of lawsuits against

consumer debtors and has utilized fraudulent debt collection practices — does not present the

same potential for abuse relevant in the majority of the cases Greenberg cites, in which excusing

the pleading of consumer-oriented conduct "would effectively permit a plaintiff to convert

---

motion to dismiss a General Business Law section 349 claim because the quantity and quality of
the allegations fell "far short" and the "most significant contentions" were alleged upon
"information and belief." *Id.* However, unlike in *Tinlee*, Plaintiff's "most significant
contentions" are not alleged upon information and belief; rather, Plaintiff has adequately alleged
misleading conduct by Greenberg and Greenberg's frequent litigation of consumer debt claims.
*Cf. Woods v. Maytag Co.*, No. 10-CV-559, 2010 WL 4314313, at *14–15 (E.D.N.Y. Nov. 2,
2010) (finding that although the plaintiff adequately alleged consumer-oriented conduct, his
section 349 claim nevertheless failed because his "most significant contentions" about the
deceptive act were alleged "upon information and belief").

almost any garden variety breach of contract cause of action into a violation of [s]ection 349."

*See Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582, 586 (E.D.N.Y. 1997); (*see also*

Greenberg Mem.18 (first citing *Magee v. Paul Revere Life Ins. Co.*, 954 F. Supp. 582 (E.D.N.Y.

1997); and then citing *Ho Jo Contracting Co., Inc. v. Schultz Ford, Inc.*, 539 N.Y.S.2d 49 (App.

Div. 1989)); Greenberg Reply 8 (first citing *Grand Gen. Store, Inc. v. Royal Indem. Co.*, No. 93-

CV-3741, 1994 WL 163973 (S.D.N.Y. Apr. 22, 1994); and then citing *Harary v. Allstate Ins.

Co.*, 983 F. Supp. 95, 99 (E.D.N.Y. 1997)).)

### iii. Plaintiff does not adequately allege consumer-oriented misconduct against Mylah Furniture and Capitol Discount

Plaintiff alleges that Mylah Furniture's conduct was "consumer-oriented and has a broad

impact on the New York consuming public." (Am. Compl. ¶ 100.) Similarly, Plaintiff alleges

"upon information and belief" that Capitol Discount "has engaged in similar conduct as a

standard business practice with a substantial number of other New York consumers," and Capitol

Discount's conduct was "consumer-oriented and has a broad impact on the New-York [sic]

consuming public." (*Id.* ¶¶ 67, 87.)

Plaintiff fails to allege consumer-oriented conduct against Mylah Furniture and Capitol

Discount because she does not allege, as she did against Greenberg, that Mylah Furniture and

Capitol Discount regularly execute or enforce retail installment contracts like the one Plaintiff

signed against similarly situated consumers. *Cf. Mass v. Spencer Leasing Corp.*, No. 12-CV-

2951, 2013 WL 5308859, at *13 (E.D.N.Y. Sept. 18, 2013) (finding allegations that defendant

"routinely hide[s] the true cost of borrowing from its customers" by the method used against the

plaintiff in the case and other means sufficient to allege consumer-oriented conduct); *Rozier v.

Fin. Rec. Sys., Inc.*, No. 10-CV-3273, 2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011)

("Plaintiff alleges that the collection letter at issue was a form letter, which was likely mailed to

thousands of customers.  Taking Plaintiff's allegations to be true, if the letter was mailed to thousands of customers, it is likely to have a broader impact on consumers at large and, thus, meets the consumer-oriented requirement of [section] 349." (citation and internal quotation marks omitted)); *M.V.B. Collision, Inc. v. Allstate Ins. Co.*, No. 7-CV-187, 2007 WL 2288046, at *4 (E.D.N.Y. Aug. 8, 2007) ("Where, as here, a defendant enters into 'contractual relationship[s] with customers nationwide' via a standard form contract and has allegedly committed the challenged actions in its dealings with multiple insureds, courts have held that such behavior . . . satisfies the requirement of 'consumer-oriented' conduct within the meaning of Section 349." (collecting cases)); *Oswego Laborers' Local*, 85 N.Y.2d at 26 (finding consumer-oriented conduct at summary judgment where the record indicated "that defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts").

Plaintiff attempts to remedy the deficiency as to her General Business Law section 349 claims against Mylah Furniture and Capitol Discount by including new allegations in her opposition to the motion to dismiss.  (Pl. Mem. 17.)  Specifically, Plaintiff claims that Mylah Furniture's conduct with Plaintiff "represents a typical consumer transaction, using a form installment for the purchase of furniture on credit that is, indisputably, integral to Mylah's business," (*id.*), and that Capitol Discount has engaged in similar misconduct with other consumers as discussed in a Civil Court, Kings County decision, (*id.* (citing *Capitol Discount Corp. v. Rivera*, 969 N.Y.S.2d 801 (N.Y. Civ. Ct. 2013))).  Plaintiff cannot rely on allegations made for the first time in opposition to a motion to dismiss in order to save the Amended

Complaint.[21]  *See Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 451

(S.D.N.Y. 2014) (disregarding allegations raised for the first time in the plaintiff's opposition to

a motion to dismiss); *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y.

1989) ("It is axiomatic that the [c]omplaint cannot be amended by the briefs in opposition to a

motion to dismiss."); *see also IKB Intern. S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 28 (2d

Cir. 2014) (declining to consider an allegation absent from the complaint but appearing for the

first time in an appellate brief).

Thus, Plaintiff has failed to state a claim under General Business Law section 349 against

Mylah Furniture and Capitol Discount.  However, as discussed below, the Court grants Plaintiff

leave to amend the allegations relevant to her section 349 claim.

> ### iv.  Plaintiff states an independent General Business Law section 349 claim

In the alternative to Defendants' argument that Plaintiff has not adequately alleged

consumer-oriented misconduct, Greenberg and Capitol Discount argue that the claim

nevertheless fails because Plaintiff incorrectly relies on General Business Law section 349, when

in fact her claim is one for a violation of New York General Business Law section 601, under

which there is no private right of action.[22]  (Greenberg Mem. 19–20.)  Plaintiff argues that

---

[21]  The Court may take judicial notice of the Civil Court, Kings County decision cited by
Plaintiff, but only for the purpose of recognizing the decision's existence.  The Court cannot
consider the factual allegations included in the decision as true, as it would need to do to find
adequate allegations that Capitol Discount is likely to engage in consumer-oriented conduct.
*See Global Network Commc'ns Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A
court may [not] take judicial notice . . . for the truth of the matters asserted in . . . other litigation,
but rather to establish the facts of such litigation and related filings.").

[22]  Section 601 of New York's General Business Law prohibits a creditor or his agent
from certain prohibited practices including, but not limited to, communicating information
regarding a consumer debtor to a debtor's employer, communicating with a debtor in a way that
is harassing, communicating in a manner that gives the impression of judicial or legal authority,

Greenberg's position is not supported by case law. (Pl. Mem. 19–20.) The Court finds Greenberg's argument unavailing.[23]

In support of her argument, Greenberg cites *Gomez v. Resurgent Capital Servs., LLP*, 129 F. Supp. 3d 147, 158–59 (S.D.N.Y. 2015) and *Conboy v. AT&T Corp.*, 241 F.3d 242, 257–58 (2d Cir. 2001). (*See* Greenberg Mem. 19–20.) As recited by the Second Circuit in *Conboy*, the district court rejected the plaintiff's claim that the defendant engaged in a "deceptive act" within the meaning of General Business Law section 349 when it placed between thirty and fifty telephone calls to collect a debt, some at unusual hours, because the plaintiff's claim was essentially alleging a violation of General Business Law section 601. *Conboy*, 241 F.3d at 247, 257–58; *see also Schlessinger v. Valspar Corp.*, 686 F.3d 81, 88 (2d Cir. 2012) ("In *Conboy*, the plaintiff couched a violation of General Business Law [section] 601— which prohibits the placement of debt collection phone calls at inappropriate hours, but allows for no private right of action — as a deceptive business practice under [section] 349."). The district court held that the plaintiff did not allege any deception. *Conboy*, 241 F.3d at 257–58. The Second Circuit affirmed the district court's rejection of the section 349 claim. *Id.* at 258. However, *Conboy* does not hold that a section 349 claim may *never* overlap with a section 601 claim, only that a plaintiff cannot successfully avoid the lack of a private right of action under section 601 by

---

simulating a law enforcement or governmental agency officer, knowingly collecting a debt unless it is "justly due," threatening to disclose wrongful information about debtor's credit worthiness, and claiming to enforce a right knowing that the right does not exist. N.Y. Gen. Bus. Law § 601. Section 601 does not provide for a private right of action. N.Y. Gen. Bus. Law § 602(2).

[23] The Court does not address whether the allegations against Capitol Discount are sufficiently pled as a General Business Law section 349 claim because the Court finds that Plaintiff did not allege that Capitol Discount engaged in consumer-oriented conduct.

bringing a section 349 claim. *Id.* at 258 ("[P]laintiffs cannot thwart legislative intent by couching a Section 601 claim as a Section 349 [claim]."). In *Gomez*, the plaintiff brought several time-barred General Business Law section 349 claims but also brought timely claims alleging that the defendant enforced a judgment based on time-barred debts and "robo-sign[ed]" post-judgment executions representing that an attorney had meaningfully reviewed the execution when in actuality there had been no review. 129 F. Supp. 3d at 158. The court interpreted the claim as one under General Business Law section 601 rather than section 349 and dismissed the claims. *Id.* at 158.

Unlike in *Conboy*, Plaintiff has not attempted to reframe a General Business Law section 601 claim as a section 349 claim. Plaintiff alleges deceptive conduct that violates General Business Law section 349 — for example, that Greenberg failed to serve Plaintiff with process, but nevertheless pursued a default judgment and did not account for money Plaintiff paid to Capitol Discount in the requested default judgment amount —and the Court will not dismiss her General Business Law section 349 claim merely because there is potential overlap with a claim under General Business Law section 601. *Cf. Conboy*, 241 F.3d at 258 (finding the alleged section 349 claim was actually a section 601 claim in part "[b]ecause a Section 349 violation requires a defendant to mislead the plaintiff in some material way, . . . and plaintiffs have not alleged any type of deception here"). To the extent that *Gomez* can be read to stand for the proposition that, as a matter of law, a General Business Law section 349 claim cannot also assert a claim under section 601, the Court disagrees. At least one court has found that the proposition in *Gomez* — that a General Business Law section 349 claim that may also invoke General Business Law section 601 fails as a matter of law — is "unpersuasive and against the weight of more compelling authority" and instead held that "a plaintiff may properly plead a claim

under [section] 349 that might also overlap with a claim under [section] 601 if the plaintiff can set forth a free-standing claim under [s]ection 349." *Martinez v. LVNV Funding, LLC*, No. 14-CV-677, 2016 WL 5719718, at *3 (E.D.N.Y. Sept. 30, 2016) (first citing *Samms*, 112 F. Supp. 3d at 117; then citing *M.V.B. Collision, Inc. v. Allstate Ins. Co.* 728 F. Supp. 2d 205, 219 (E.D.N.Y. 2010); and then citing *Sigall v. Zipcar, Inc.*, No. 13-CV-4552, 2014 WL 700331, at *4 (S.D.N.Y. Feb. 24, 2014)).

### e. New York Personal Property Law section 402 claims – Mylah Furniture and Capitol Discount

Plaintiff alleges that Mylah Furniture and Capitol Discount, as the assignee of the Contract, violated section 402(4) of New York's Personal Property Law by causing Plaintiff to sign a retail-installment contract with blank portions and later completing the blank portions of the Contract. (Am. Compl. ¶¶ 94, 105.) Plaintiff also alleges that Capitol Discount violated Personal Property Law section 402(6-a) by seeking attorneys' fees that were not authorized by agreement or by law.[24] (*Id*. ¶¶ 93, 95.)

### i. Plaintiff fails to state a Personal Property Law section 402(4) claim

Mylah Furniture argues that Plaintiff fails to allege facts as to which portions of the Contract were blank at the time Plaintiff signed it. (Mylah Mem. 6 (noting that section 402(4) "contemplates that certain items may be left blank").) Plaintiff argues that the Amended Complaint "makes clear that the most important terms of the retail installment contract such as the interest rate and amount of the monthly payments were the relevant sections that were blank when [Plaintiff] signed the contract." (Pl. Mem. 22.)

---

[24] Plaintiff asserts that Mylah Furniture also sought legal fees in violation of section 401(6-a), (Am. Compl. ¶ 104), but Plaintiff does not provide any facts to support the allegation that Mylah Furniture was involved in seeking legal fees, nor does Plaintiff provide any basis to hold Mylah Furniture liable for Capitol Discount's alleged conduct. Accordingly, the Court disregards this allegation.

Personal Property Law section 402(4) provides that:

> No contract or obligation shall be signed by the buyer when it contains blank spaces to be filled in after it has been signed; however, if delivery of the goods is not made at the time of the execution of the contract or obligation and it so provides, the identifying number or marks of the goods and the due date of the first instalment may be left blank and later inserted by the seller in the seller's counterpart of the contract or obligation after it has been signed by the buyer.

N.Y. Pers. Prop. Law § 402(4).

Plaintiff asserts only that "[t]he document that the salesman provided [Plaintiff] contained blank portions," (Am. Compl. ¶ 15), but fails to specify what portions of the contract were blank. Accordingly, Plaintiff's claim fails because she alleges that the Contract was signed prior to delivery of the goods, making the Contract subject to the Personal Property Law section 402(4) exception that allows for certain details regarding the purchase to be left blank. *See* N.Y. Pers. Prop. Law § 402(4) (permitting seller to insert certain "identifying numbers or marks of the goods" and "the due date of the first instalment" after buyer has signed). Thus, the Court cannot determine from the allegations in the Amended Complaint which "blank portions" of the Contract were completed after Plaintiff signed the Contract.[25] *Cf. Kristiansen v. John Mullins*

---

[25] Mylah Furniture and Capitol Discount both argue that the Court should consider the additional documents related to Plaintiff's furniture purchase, including a credit agreement and an invoice, that they submitted to the Court. (Capitol Discount Mem. 7; Mylah Mem. 6.) The Court declines to consider these documents because they are not integral to the Amended Complaint. *See Chambers*, 282 F.3d at 153 (holding that a document is integral to the complaint where the plaintiff (1) has "actual notice" of the document and its information and (2) has "relied upon the[ ] document[] in framing the complaint" (quoting *Cortec Indus., Inc.*, 949 F.2d at 48)). There is no indication that Plaintiff relied upon the credit agreement or invoice in drafting the Amended Complaint, as she consistently refers to one document that she labels the retail installment contract. Moreover, Capitol Discount's argument that the documents factually contradict the allegations in the Amended Complaint because the credit agreement is dated September 22, 2012 and the Contract September 25, 2012, (Capitol Discount Mem. 7 n.1), is irrelevant to the Court's analysis of whether the Contract included significant blank portions in violation of section 402(4) at the time it was signed.

*and Sons Inc.*, 59 F.R.D. 99, 102, 110 (E.D.N.Y. 1973) (finding allegations that a furniture chain store regularly entered into credit contracts using "printed sales and credit form[s]" without disclosing, among other things, the method for calculating the finance charge and the sum of all periodic payments stated a claim for relief under the Truth In Lending Act and section 402(3)(b)(1)). Plaintiff's complaint to Mylah Furniture about the interest rate and monthly installments after receiving the Contract is not sufficient, alone, to show that those portions of the contract were blank. If the claim against Mylah Furniture fails, so must the claim against Capitol Discount that is predicated on Capitol Discount's assignee liability. Plaintiff asserts that Capitol Discount is subject to all claims and defenses Plaintiff could assert against Mylah Furniture pursuant to 16 C.F.R. section 433.2 (the "Holder Rule") and New York Personal Property Law section 403(4). (Am. Compl. ¶ 11.) Therefore, Capitol Discount cannot be held liable under the Holder Rule or New York Personal Property Law section 403(4), which provide for liability only where there is underlying liability to the original contracting party.[26]

---

[26] The Court declines to address Capitol Discount's remaining argument that it can only be held liable as the holder of the contract under section 1641(a) of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1641(a), for violations that would have been apparent on the face of the Contract when it was assigned because the TILA assignee liability provision preempts the Holder Rule and liability under Personal Property Law section 402(4). (Capitol Discount Mem. 7–8; Capitol Discount Reply 6–8.) Because Plaintiff has failed to identify the specific portions of the Contract which were allegedly blank at the time the Contract was signed, the Court cannot determine the basis for Plaintiff's claim, if any, in order to determine whether it is a disguised TILA claim and whether Capitol Discount's assignee liability should be limited. *See, e.g.*, *Ramirez v. Nat'l Co-op Bank*, 938 N.Y.S.2d 280, 282–83 (App. Div. 2011) (noting that TILA assignee liability applies where a state-law violation concerns disclosure required by TILA such as "credit terms such as the amount financed, finance charge, annual percentage rate, total of payments, total sale price, and the number, amount, and due dates or period of payments to repay the total payments" and the state law "'purport[s] to alter the format, content, and manner of the TILA-required disclosures' or 'require[s] credit issuers to affirmatively disclose specific credit term information not embraced by TILA'" (alterations in original) (quoting *Matter of People v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 114 (2008))). The Court also declines to consider, at this stage of the litigation, Capitol Discount's unsupported claim that Plaintiff's Personal

### ii.    Plaintiff fails to state a Personal Property Law section 402(6-a) claim

Capitol Discount argues that Plaintiff's Personal Property Law section 402(6-a) claim fails as a matter of law because Plaintiff admits that the Contract did not include a provision for attorneys' fees, and section 402(6-a) protects against an unlawful contract or obligation provision providing for attorneys' fees — not against the collection of attorneys' fees on any litigation relating to a retail installment contract.  (Capitol Discount Mem. 8–9; Capitol Discount Reply 9–10.)  Plaintiff argues that Capitol Discount's "construction would permit parties to engage in the precise type of conduct the New York Legislature stated by Statute that it wished to prohibit." (Pl. Mem. 24.)

Personal Property Law section 402(6-a) provides that "[a] provision in a contract or obligation which provides for the payment of attorney's fees or the costs of attorney's services incurred in a legal action or proceeding for collection shall be null and void."  N.Y. Pers. Prop. Law § 401(6-a).  Plaintiff's claim that Capitol Discount sought attorneys' fees in violation of section 401(6-a) is dismissed because, by its explicit language, section 402(6-a) does not apply to Plaintiff's allegations.  *See* N.Y. Pers. Prop. Law § 402(6-a).

Plaintiff does not allege that the Contract contained a clause violating section 402(6-a) and her argument that seeking attorneys' fees violates the spirit of section 402(6-a) is unpersuasive.  Section 402(6-a) specifically protects against contract provisions allowing for the collection of attorneys' fees, not otherwise deceptive or dishonest consumer debt practices relating to the same.  *See, e.g.*, *Cheshire Acad. v. Lee*, 448 N.Y.S.2d 112, 114 (N.Y. Civ. Ct. 1982) (declining award of attorneys' fees based on a provision of a retail installment obligation because the contractual provision was rendered void by section 402(6-a)); *Broadstreets Inc. v.*

---

Property Law section 402(4) claim is entirely preempted by TILA.  (Capitol Discount Mem. 8 n.2.)

*Parlin*, 348 N.Y.S.2d 724, 726 (N.Y. Civ. Ct. 1973) (explaining that provisions "for the payment of attorneys['] fees are now void under retail installment sales agreements" (citing N.Y. Pers. Prop. Law § 402(6))). Accordingly, Plaintiff does not state a claim under section 402(6-a).

Thus, the Court dismisses Plaintiff's claims against Mylah Furniture and Capitol Discount under section 402 of the New York Personal Property Law.

### f. Leave to file an amended complaint

Contrary to Capitol Discount's argument that allowing Plaintiff to file an amended complaint would be futile, (Capitol Discount Mem. 10), Plaintiff has demonstrated through the allegations in her opposition to the motion to dismiss that she may be capable of alleging facts that Mylah Furniture and Capitol Discount engaged in consumer-oriented conduct and that when Plaintiff signed the Contract, it included blank portions other than those allowed for under Personal Property Law section 402(4). Accordingly, the Court grants Plaintiff leave to amend her claims under section 349 of the General Business Law and section 402(4) of the Personal Property Law. *See* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires"); *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) ("It is 'within the sound discretion of the district court to grant or deny leave to amend.'" (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007))).

## III. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendants' motions to dismiss. The Court (1) grants in part and denies in part Greenberg's motion to dismiss Plaintiff's FDCPA claims, (2) denies Greenberg's motion to dismiss Plaintiff's state law claims, and (3) grants Mylah Furniture's and Capitol Discount's motions to dismiss. Accordingly, Plaintiff's claims under sections 1692e and 1692f of the FDCPA shall proceed. The Court grants

45

Plaintiff thirty (30) days from the date of this Memorandum and Order to file a second amended complaint as to her claims against Mylah Furniture and Capitol Discount under General Business Law section 349 and Personal Property Law section 402(4).

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 31, 2017
       Brooklyn, New York