-----------------------------------------------------------------X

DAPHNEY SCOTT

Case No.:
1:15-cv-05527-MKB-RER

Plaintiff,

-against-                                    DEMAND FOR A JURY TRIAL

E. HOPE GREENBERG,
CAPITOL DISCOUNT CORP., and
MYLAH FURNITURE INC. a/k/a
MAYLAH FURNITURE

Defendants.

-----------------------------------------------------------------X

## SECOND AMENDED COMPLAINT

Plaintiff Daphney Scott brings suit against Defendants for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*, N.Y. General Business Law § 349 *et seq*, N.Y. Personal Property Law § 402 and for violations of Judiciary Law § 487, and in support would show as follows.

## PRELIMINARY STATEMENT

1. This suit challenges Defendants' misleading and abusive business practices and debt collection tactics against Ms. Scott. Defendant Maylah Furniture engaged in deceptive practices in order to dupe Ms. Scott into signing retail installment contract at an exorbitant rate of interest. Defendants Capitol Discount Corporation, and its counsel, E. Hope Greenberg, engaged in deceptive, harassing, and misleading behavior to collect monies to which Defendants were not legally entitled. E. Hope Greenberg also engaged in harassing litigation designed to further injure Ms. Scott by continuing to collect money from Ms. Scott using unlawful means.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA"), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue in this District is proper because a substantial part of the events giving rise to the claims occurred in Kings County, New York.

## PARTIES

4. Plaintiff Daphney Scott is an individual residing at 1352 Bushwick Avenue, Apt. 2, Brooklyn, New York 11207.

5. Ms. Scott is a "consumer" as that term is defined by § 1692a(3) of the FDCPA. Ms. Scott was alleged to owe a debt arising from the purchase of home furniture.

6. Defendant E. Hope Greenberg ("Attorney Greenberg") is an individual regularly engaged in the business of collecting debts in New York State.

7. Attorney Greenberg is a "debt collector" within the meaning of § 1692a(6) of the FDCPA. Attorney Greenberg has filed thousands of lawsuits on behalf putative creditors for the collection of consumer debts including furniture purchases, car loans, and putative credit card accounts.

8. Attorney Greenberg's principal place of business is located at 2650 Merrick Road, Suite 101, Bellmore, New York 11710. Upon information and belief, Attorney Greenberg is the sole practitioner at the Law Office of E. Hope Greenberg.

9. Capitol Discount is a domestic corporation organized under the laws of the State of New York with its principal place of business located at 2650 Merrick Road, Bellmore, New York

11710.

10. Maylah Furniture is a furniture store with a business address at 1602 Pitkin Avenue, Brooklyn, New York 11212. Mylah Furniture Inc. is a company listed as a domestic business corporation with New York Department of State with a business address at 1730 Pitkin Avenue, Brooklyn, New York 11212. Upon information and belief, Mylah Furniture Inc. is related to and/or does business as Maylah Furniture.

11. Capitol Discount, as the assignee of the retail installment contract, is subject to all claims and defenses that Ms. Scott could assert against the seller of the consumer goods, Maylah Furniture. This is imposed by the Holder Rule that preserves the consumer's claims and defenses against the creditor-assignee or, namely, "the holder" of the contract. 15 C.F.R. § 433.2 and New York Personal Property Law § 403(4).

## STATEMENT OF FACTS

12. On or around September 25, 2012, Ms. Scott went to the furniture store Maylah Furniture in Brooklyn looking for a couch and a table, which she hoped to purchase on a store lay-a-way payment plan. The clerk at the store informed her that she could not purchase any items on lay-a-way, but that she could finance the purchase.

13. After a short time, the clerk informed Ms. Scott that he had called a few financing companies but that she already had been denied financing. Ms. Scott never gave the salesman permission to run her credit; the only documentation she provided were copies of a few recent paystubs.

14. After Ms. Scott found a table, couch, and dresser that she wished to purchase, she told the salesman she would return after work to complete the purchase. The salesman replied "no," stating that it would take time for him to shop around to find her financing for the furniture,

and that all that was currently required for her to complete the purchase was for her to sign a document that he provided. He stated that if she signed, he could continue searching for financing for the purchase of the furniture.

15. The document that the salesman provided Ms. Scott contained blank portions.

16. The portions of the contract that were left blank included, but were not limited to, the amount financed, the finance charge, the total amount of payments, the total sales price, the annual percentage rate, and the number and amounts of payments.

17. Ms. Scott questioned the salesman about it, but he insisted that the blank portions of the document were not significant. He stated that they were blank because he did not yet secure financing for the purchase. He explained that her signature on the document only granted him permission to search for a company to finance the furniture purchase.

18. Before leaving the store, she communicated to the clerk that she did not make very much money and could not afford a high interest rate or high monthly payments. She stated that if he could not find an affordable deal then she wished not to purchase the furniture on credit. The salesman assured her not to worry because he would get her a "good deal."

19. He took $50 as a down payment toward the total $3,050 cash value of the furniture.

20. A few days later, the furniture was delivered to Ms. Scott's home. Within approximately a week, the chairs and table were falling apart. Within approximately six months, the furniture was in such poor shape that it was unusable and she threw away all of the items except the dresser.

21. In or around October 2012, Ms. Scott received a document that purported to be a contract for the furniture purchase. Ms. Scott recognized it as the document she had signed in the store. The blank portions had been filled in.

22. The contract was dated September 25, 2012. At the top of the page, the contract was titled "Security Agreement - Retail Installment Contract." To the left and directly below the Security Agreement title, the contract listed Maylah Furniture as the seller's name. To the right of the seller's name the contract listed Defendant Capitol Discount's full business name and its address at 2650 Merrick Road, Bellmore, New York, 11710-5707.

23. The annual percentage rate for the purchase of the furniture was 24.9%.

24. The cash price of the furniture was recorded as $3,050. After crediting Ms. Scott $50 for the down payment, the contract set forth a financing agreement for the amount of $3,000.

25. The Retail Installment Contract dated September 25, 2012, did not provide for the payment of attorney's fees.

26. Upon information and belief, Capitol Discount did not provide for attorney's fees in its contract because it is prohibited from doing so under New York Personal Property Law § 402 (6-a).

27. Section 402(6-a) of the New York Personal Property Law provides that, "A provision in a contract or obligation which provides for the payment of attorney's fees or the costs of attorney's services incurred in a legal action or proceeding for collection shall be null and void."

28. The contract provided a breakdown of the financing charges: the Finance Charge was $1,290.48; the Total of Payments was $4,290.48; and, the Total Sales Price was $4,340.48. The contract provided that Ms. Scott was obligated to pay 36 payments in the amount of $119.18 per month starting on October 25, 2012, and the remaining payments were to be made on the same day each month at the "office address of any 'holder of this contract.'"

29. The contract provided several "notice(s) to the buyer," including a notice that the contract

"may" be assigned to Capitol Discount, and that the holder of the contract is subject to all of the claims and defenses that the debtor could assert against the seller of the goods obtained pursuant to the contract.

30. Ms. Scott called the same Maylah Furniture salesman immediately and questioned why he did not contact her first to confirm whether or not she accepted the deal. She again stated that she did not agree to purchase the furniture at a high interest rate or high monthly payments. She informed the salesman that she wished to return the furniture, but he replied that even if she returned the furniture she would still owe the money. He told her there was nothing she could do to avoid her obligations under the contract.

31. Ms. Scott believed she had no option other than to start paying the $119.18 monthly payments.

32. Ms. Scott continued to make the monthly payments to Capitol Discount until her mother became sick and needed financial help for her care. In or around July 2013, Ms. Scott ceased making payments.

33. After Ms. Scott ceased paying in or around July 2013, Capitol Discount started calling her approximately every other day to her home and cell phone numbers. Capitol Discount called her at least 10 times at work even after she told Capitol Discount not to contact her at work. She told the Capitol Discount callers, on at least two occasions, that she was not allowed to receive personal calls at work and the company was placing her job in jeopardy.

34. On January 7, 2014, E. Hope Greenberg on behalf of Capitol Discount Corp initiated an action in the Civil Court of the City of New York in Kings County against Ms. Scott. *Capitol Discount Corp v. Daphney Scott*, CV-000280-14/KI (Jan. 7, 2014) (the "collections lawsuit").

35. In or around January 2014, Ms. Scott made a payment to Capitol Discount in the amount of $100.

36. In or around February 2014, Ms. Scott received a Summons from Capitol Discount in the mail. The Summons stated that Capitol Discount sought a judgment for the sum of $2,561.65 plus interest from July 5, 2013, together with costs of the action.

37. Ms. Scott was never served with the Summons and Verified Complaint.

38. Ms. Scott never received a copy of the Verified Complaint by mail.

39. The Summons named Attorney Greenberg as the attorney for Capitol Discount. Ms. Scott called the number listed on the Summons for Attorney Greenberg.

40. Upon information and belief, the name of the person who answered the phone at Attorney Greenberg's office was Mr. Russel.

41. Ms. Scott questioned if and when she had to appear in court. There was no court date listed on the face of the Summons.

42. Mr. Russel told Ms. Scott that she did not need to go to court as long as she continued to pay Capitol Discount.

43. During the phone conversation, Mr. Russel also stated that Ms. Scott owed an additional $800 more than what was sued for on the Summons ($2,561.65).

44. Mr. Russel stated that this represented interest and fees.

45. Ms. Scott relied on the information she was given by Attorney Greenberg's office. At all times during this conversation, Mr. Russel held himself as acting on behalf of Attorney Greenberg and as having authority to resolve the summons that Ms. Scott had received.

46. By the end of the conversation, the parties negotiated a settlement to pay the amount $2561.65 (the amount of the face of the Summons) in monthly payments of $100-$150 a

month.

47. In reliance on Attorney Greenberg's office's representation, Ms. Scott did not appear in court or file an answer.

48. In or around January 2014, Ms. Scott paid $100; in February 2014, she paid $100; in March 2014, she paid $500; and, in April 2014, she paid $150.

49. During this time, Ms. Scott understood that Capitol Discount and Attorney Greenberg were not pursuing the court case because Mr. Russel told her that they would not do so as long as she paid.

50. On or about April 28, 2014, Attorney Greenberg, on behalf of Capitol Discount, entered a default judgment against Ms. Scott for the amount in $3,311.88.

51. The default judgment amount entered did not credit Ms. Scott for the approximately $850 in payments that Ms. Scott paid directly to Capitol Discount from January 2014 and up until the point of the entry of the default judgment.

52. The default judgment included the amount claimed in the complaint ($2,562.65); interest at the rate of 24.9% from July 5, 2013 ($519.23); Cost by Statute ($20); Index Number fee ($45); Consumer Credit fee ($95); Service fee ($25); and an Enforcement fee ($45) for a total of $3,311.99.

53. In support of the default judgment, Attorney Greenberg submitted an affidavit of service stating that Ms. Scott had been served.

54. The affidavit of service stated that on February 12, 2014, at 4:41 pm the process server, Ebrahim Eliwa, served a "Jane Doe" who is around 40 years old, around 5'6", 180 lbs., with black hair and skin.

55. The affidavit is false. The description does not meet the description of Ms. Scott or anyone

who lived with Ms. Scott at the time of alleged service, which included her twin 25-year-old daughters, her youngest daughter, who is 16, and her grandchildren, who are 7 and 8 years old.

56. The default judgment filed by Attorney Greenberg did not request an award of attorney's fees.

57. Ms. Scott never received notice in April 2014 that a default judgment had been entered against her in the collections lawsuit.

58. In a letter dated February 23, 2015, from Capitol Discount to Ms. Scott, Jarrod Greenberg an "Account Manager" for Capitol Discount, stated that a portion of the total amount that Ms. Scott owed to Capitol Discount as of the date of the letter included $160 in "legal costs," i.e. attorney's fees.

59. There was no basis, in contract or law, for Attorney Greenberg or Capitol Discount to seek attorneys' fees from Ms. Scott in the underlying collections lawsuit.

60. In or around February 2015, Ms. Scott's employer received an income execution from Marshal Bruce Kemp. At that point, Ms. Scott had paid Capitol Discount approximately $2550.

61. This was the first time Ms. Scott learned of the default judgment entered against her in the collections lawsuit. This was also the first time she realized that Attorney Greenberg's office lied to her about her obligation to appear in court.

62. Since the time of Ms. Scott's conversation with Attorney Greenberg's office in or around January 2014, she had paid a total of approximately $1750 to Capitol Discount.

63. Ms. Scott paid $100 in each of March, April, and May 2015 to Marshal Kemp, and in April 2015 she also made a $500 payment directly to Capitol Discount.

64. On or about June 16, 2015, Ms. Scott moved by order to show cause to vacate the default judgment in the collections lawsuit raising the issue of lack of personal jurisdiction pursuant to N.Y. C.P.L.R. § 5015(a)(4) because of bad service, or, in the alternative, moving the court to vacate the default judgment and restore the case to the trial calendar pursuant to N.Y. C.P.L.R. § 5015(a)(1) based the fact that she had a reasonable excuse for not answering the claim and had meritorious defenses to the underlying collections action.

65. This was the first time Ms. Scott saw the false affidavit of service.

66. On June 30, 2015, the Kings Count Civil Court granted Ms. Scott's request for relief on default, vacated the judgment, and dismissed the case.

67. Defendant's actions have caused extreme anxiety, stress, and emotional distress causing Ms. Scott to suffer symptoms such as sleeplessness, restlessness, and loss of appetite.

68. Ms. Scott was also embarrassed by the fact that her supervisor was served with the income execution from the Marshal and was made to believe that she was financially irresponsible.

69. Upon information and belief, Attorney Greenberg has engaged in similar conduct as a standard business practice with a substantial number of other New York consumer litigants who are sued by her office for putative consumer debts.

70. Attorney Greenberg has filed thousands of debt collection actions in the New York State courts.

71. Upon information and belief, Attorney Greenberg, or an employee of Attorney Greenberg's office acting on her behalf, has falsely represented to other New York consumer litigants that s/he did not need to go to court to answer a collections lawsuit complaint.

72. For example, a review of cases filed by Attorney Greenberg in the New York City Civil Courts exposed instances where the court found that Attorney Greenberg, or an employee of

Attorney Greenberg's office acting on her behalf, falsely represented to litigants that s/he did not need to go to court to answer or appear in a collections lawsuit.

73. Upon information and belief, Attorney Greenberg has sought default judgments in collections lawsuits against New York consumer litigants after falsely representing to those litigants that s/he did not need to appear in the collections lawsuit.

74. Upon information and belief, Attorney Greenberg has routinely filed or caused to be filed other false affidavits of service in the New York City Civil Courts.

75. Upon information and belief, Attorney Greenberg routinely files false affidavits of service in the New York City Civil Courts alleging service upon a person of suitable age and discretion.

76. Upon information and belief, Capitol Discount has engaged in similar conduct to its conduct with Ms. Scott as a standard business practice with a substantial number of other New York consumers.

77. Capitol Discount has filed thousands of debt collection actions in the New York State courts.

78. The New York State Unified Court System's eCourt system shows that since 2014 Capitol Discount has filed approximately 1,250 cases against New York consumers in the New York Civil and City Courts for putative consumer debts.

79. Upon information and belief, Capitol Discount uses standard, form retail installment contracts that are identical or similar to the contract provided to Ms. Scott.

80. According to Capitol Discount's 2014 annual report filed with the New York's Department of Financial Services ("DFS Annual Report"), Capitol Discount, and its assumed or doing-business-as name Clover Commercial, is in the business of financing furniture and automobiles that includes the business of purchasing retail installment contracts from retail sellers.

81. The 2014 DFS Annual Report states that in addition to the sales finance business Capitol Discount and/or Clover Commercial also operates as a collection agency for the collection of purchased accounts receivables.

82. The sample contract submitted by Capitol Discount as a part of the DFS Annual Report, as an example of the contract it uses in its businesses, is a form contract that is nearly identical to the contract provided to Ms. Scott.

83. Upon information and belief, Capitol Discount does business with furniture stores throughout the New York metropolitan area, regularly presenting consumers with blank retail installment contracts that deceptively conceal the actual cost of the financed product.

84. Upon information and belief, Capitol Discount regularly does business with sellers that misrepresent the legal nature of lending documents, such as retail installment contracts, in order to deceptively induce consumers to sign those documents.

85. Upon information and belief, Capitol Discount regularly acts together with sellers to obtain default judgments after consumers miss payments for the purchase of shoddy consumer goods.

86. Upon information and belief, Capitol Discount routinely provides false information to consumers regarding the availability of the consumer's legal recourse, thereby inducing those litigants to not appear or default in civil court collections actions or to discourage consumers from raising valid legal defenses.

87. A review of a random selection of cases filed by Capitol Discount, or its assumed or doing-business-as name Clover Commercial, in the New York City Civil Courts exposed instances where consumer litigants alleged that Capitol Discount dismissed consumer complaints and made consumers believe that they had no legal recourse.

88. On information and belief, Capitol Discount's practice of doing business with furniture stores throughout the New York metropolitan area where the consumer was provided a Capitol Discount contract that was incomplete and materially changed after the consumer signed represents a routine practice. In *Capitol Discount Corp v. Rivera*, 38 Misc.3d 1226(A) 2013 WL 692940 (Kings Cty. Civ. Ct. 2013), the court cited this practice and "very unfortunate trend."

89. Upon information and belief, Captiol Discount routinely has filed or caused to be filed other false affidavits of service in the New York City Civil Courts.

90. Upon information and belief, Capitol Discount routinely files false affidavits of service in the New York City Civil Courts alleging service upon a person of suitable age and discretion.

91. Upon information and belief, Capitol Discount regularly misrepresents its entitlement to amounts not authorized by law or agreement.

92. Upon information and belief, Maylah Furniture has engaged in similar conduct similar to its practices with Ms. Scott as a standard business practice with a substantial number of other New York consumers.

93. Upon information and belief, Maylah Furniture's conduct with Ms. Scott represents a typical consumer transaction, using a form installment contract for the purchase of furniture that is integral to Maylah's business.

94. A review of a random selection of cases filed by Capitol Discount as the holder and Maylah Furniture as the seller demonstrates that Maylah Furniture regularly utilizes Capitol Discount's standard form contract when it sells furniture on credit to consumers.

95. Upon information and belief, Maylah Furniture regularly misrepresents the legal nature of lending documents, such as retail installment contracts, in order to deceptively induce

consumers to sign those documents for the purchase of shoddy furniture.

96. Upon information and belief, Maylah Furniture regularly presents consumers with blank retail installment contracts that deceptively conceal the actual cost of the financed product.

97. A review of the complaints filed by consumers with the New York City, Department of Consumer Affairs ("DCA") reveals that Maylah Furniture, and/or its related businesses, regularly misrepresents to consumers the actual cost of the financed merchandise, the nature of the financing, and the substance of the documents that the store insists that its consumers sign.

98. A review of the complaints filed by consumers with the DCA further reveals that Maylah Furniture regularly and chronically sells defective and damaged furniture to New York consumers, and routinely lies to consumers about the quality and nature of the products it sells.

## FIRST CAUSE OF ACTION
### (FDCPA, 15 U.S.C. § 1692)
*Against Attorney Greenberg*

99. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

100.   Defendant Attorney Greenberg violated the FDCPA, 15 U.S.C. §§ 1692e, and 1692f, by making false and misleading representations, using deceptive means, and engaging in unfair and abusive practices.  Defendant Attorney Greenberg's violations include, but are not limited to:

    a. Falsely representing to Ms. Scott that she did not need to go to court to answer the collection lawsuit complaint;

    b. Seeking a default judgment in the collections lawsuit against Ms. Scott after

falsely representing to Ms. Scott that she did not need to answer the collections complaint;

   c.  Unlawfully enforcing a default judgment in a collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

   d.  Seeking amounts not expressly authorized by agreement;

   e.  Seeking amounts not expressly authorized by law;

   f.  Falsely representing to Ms. Scott Defendants' entitlement for fees not authorized by agreement or by law;

   g.  Engaging in harassing, oppressive, and abusive litigation conduct;

   h.  Filing or causing to be filed a false affidavit of service.

## SECOND CAUSE OF ACTION
### (N.Y. Gen. Bus. Law § 349)
*Against Attorney Greenberg*

101.  Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

102.  Defendant Attorney Greenberg violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of her business.

103.  Defendant Attorney Greenberg committed the deceptive acts and practices willfully and/or knowingly.

104.  Defendant Attorney Greenberg's conduct was consumer-oriented and has a broad impact on the New York consuming public.

105.  Defendant Attorney Greenberg's wrongful and deceptive acts caused injury and damages to Plaintiff.

106. Defendant Attorney Greenberg's violations include, but are not limited to:

    a. Falsely representing to Ms. Scott that she did not need to go to court to answer the collection lawsuit complaint;

    b. Seeking a default judgment in the collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

    c. Unlawfully enforcing a default judgment in a collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

    d. Seeking amounts not expressly authorized by agreement;

    e. Seeking amounts not expressly authorized by law;

    f. Falsely representing to Ms. Scott Defendants' entitlement for fees not authorized by agreement or by law;

    g. Engaging in harassing, oppressive, and abusive litigation conduct;

    h. Filing or causing to be filed a false affidavit of service.

107. As a direct and proximate result of these violations of section 349 of the General Business Law, Ms. Scott has suffered compensable harm and is entitled to recover actual and treble damages, costs and attorney's fees.

**THIRD CAUSE OF ACTION**
**(N.Y. Judiciary Law § 487)**
*Against Attorney Greenberg*

108. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

109. Defendant Attorney Greenberg violated section 487 of the New York Judiciary Law by

engaging in deceit or collusion, or consenting to deceit or collusion, with the intent to deceive the court and Ms. Scott.

110.    Defendant Attorney Greenberg committed the above-described acts willfully and/or knowingly.

111.    Defendant Attorney Greenberg's wrongful and deceptive acts have caused injury and damages to Plaintiff.

112.    Upon information and belief, Defendant Attorney Greenberg has engaged in similar deceptive schemes, as detailed above, with other unrepresented litigants and the court rising to the level of a chronic and extreme pattern of conduct.

113.    Defendant Attorney Greenberg's violations include, but are not limited to:

      a.  Falsely representing to Ms. Scott that she did not need to go to court to answer the collection lawsuit complaint;

      b.  Seeking a default judgment in the collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

      c.  Unlawfully enforcing a default judgment in a collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

      d.  Seeking amounts not expressly authorized by agreement;

      e.  Seeking amounts not expressly authorized by law;

      f.  Engaging in harassing, oppressive, and abusive litigation conduct;

      g.  Filing or causing to be filed a false affidavit of service.

114.    As a direct and proximate result of these violations of section 487 of the New York

Judiciary Law, Ms. Scott has suffered compensable harm and is entitled to recover actual and treble damages.

## FOURTH CAUSE OF ACTION
### (N.Y. Gen. Bus. Law § 349)
*Against Capitol Discount*

115.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

116.    Defendant Capitol Discount violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of its business.

117.    Defendant Capitol Discount committed the deceptive acts and practices willfully and/or knowingly.

118.    Defendant Capitol Discount's conduct was consumer-oriented and has a broad impact on the New-York consuming public.

119.    Defendant Capitol Discount's wrongful and deceptive acts caused injury and damages to Plaintiff.

120.    Defendant Capitol Discount, as the holder of the instant consumer contract, is liable for the following violations that include, but are not limited to:

    a. Inducing Ms. Scott to sign a blank retail installment contract by misrepresenting to Ms. Scott that it was not a contract but a finance application;

    b. Falsely representing to Ms. Scott the legal nature of the document she was induced to sign;

121.    Defendant's violations include, but are not limited to:

    a. Falsely representing to Ms. Scott that she did not need to go to court to answer the collection lawsuit complaint;

b. Seeking a default judgment in the collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

c. Unlawfully enforcing a default judgment in a collections lawsuit against Ms. Scott after falsely representing to Ms. Scott that she did not need to answer the collections complaint;

d. Seeking amounts not expressly authorized by agreement;

e. Seeking amounts not expressly authorized by law;

f. Falsely representing to Ms. Scott Defendants' entitlement for fees not authorized by agreement or by law;

g. Engaging in harassing, oppressive, and abusive litigation conduct;

h. Filing or causing to be filed a false affidavit of service.

122. As a direct and proximate result of these violations of section 349 of the General Business Law, Ms. Scott has suffered compensable harm and is entitled to recover actual and treble damages, costs and attorney's fees.

### FIFTH CAUSE OF ACTION
#### (N.Y. Pers. Prop. Law § 402)
*Against Capitol Discount*

123. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

124. Defendant Capitol Discount violated New York Personal Property Law § 402 by causing Plaintiff to sign a blank contract for the terms to be filled in after it was signed.

125. Defendant Capitol Discount, as the holder of the consumer contract, is liable for the following violation that includes, but is not limited to:

      a.  Causing Ms. Scott to sign a blank retail installment contract that contained blank spaces that were filled in after she signed it.

126.   Defendant's violations include, but are not limited to:

      a.  Seeking amounts not expressly authorized by agreement;

      b.  Seeking amounts not expressly authorized by law.

127.   Because Capitol Discount violated section 402 of the New York Personal Property Law, Ms. Scott has the right to recover from Defendant an amount equal to the credit service charge or service charge imposed and the amount of any delinquency, collection, extension, deferral or refinance charge imposed, and/or the total amount paid pursuant to the Retail Installment Contract.

**SIXTH CAUSE OF ACTION**
**(N.Y. Gen. Bus. Law § 349)**
*Against Maylah Furniture*

128.   Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

129.   Defendant Maylah Furniture violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of its business.

130.   Defendant Maylah Furniture committed the deceptive acts and practices willfully and/or knowingly.

131.   Defendant Maylah Furniture's conduct was consumer-oriented and has a broad impact on the New York consuming public.

132.   Defendant Maylah Furniture's wrongful and deceptive acts caused injury and damages to Plaintiff.

133.   Defendant's violations include, but are not limited to:

a. Inducing Ms. Scott to sign a blank retail installment contract by misrepresenting to Ms. Scott that it was not a contract but a finance application; and

b. Falsely representing to Ms. Scott the legal nature of the document she was induced to sign.

## SEVENTH CAUSE OF ACTION
### (N.Y. Pers. Prop. Law § 402)
*Against Maylah Furniture*

134. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

135. Defendant Maylah Furniture violated New York Personal Property Law § 402 by causing Plaintiff to sign a blank contract for the terms to be filled in after it was signed.

136. Defendant's violation includes, but is not limited to:

a. Causing Ms. Scott to sign a blank retail installment contract that contained blank spaces that were filled in after she signed it.

137. Because Maylah Furniture violated section 402 of the New York Personal Property Law, Ms. Scott has the right to recover from Defendant an amount equal to the credit service charge or service charge imposed and the amount of any delinquency, collection, extension, deferral or refinance charge imposed, and/or the total amount paid pursuant to the Retail Installment Contract.

## JURY DEMAND

Plaintiff demands a trial by jury.

138. WHEREFORE, Plaintiff requests the following relief:

a. A declaration that all Defendants have committed the violations of law alleged in this action;

b. An order enjoining and directing all Defendants to cease violating G.B.L. § 349 *et seq.*;

c. Statutory damages under 15 U.S.C. § 1692k;

d. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k and G.B.L. § 349;

e. A judgment for actual, statutory, punitive, and exemplary damages;

f. Prejudgment and post judgment interest as allowed by law;

g. Such other and further relief as to the Court may appear just and proper.

Dated: New York, New York
April 27, 2017

Respectfully submitted,

BETH GOLDMAN, ESQ.
NEW YORK LEGAL ASSISTANCE GROUP
7 Hanover Square, 18th Floor
New York, New York 10004

By: /s/ Shanna Tallarico
Shanna Tallarico, of Counsel
Attorney for Plaintiff Daphney Scott
Phone: (212) 613-6555
Fax: (212) 714-7591
Email: STallarico@nylag.org

By: /s/ Sidney Cherubin
Sidney Cherubin, Esq., Director of Legal Services
Attorney for Plaintiff Daphney Scott
Brooklyn Bar Association Volunteer Lawyers Project
44 Court Street, Suite 1206
Brooklyn, New York 11201
(718) 624-3895
(718) 624-3926(fax)
Email: scherubin@brooklynvlp.org