UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------

DAPHNEY SCOTT,

                      Plaintiff,

      v.

MYLAH FURNITURE INC., *also known as*
MAYLAH FURNITURE,

                      Defendant.

**MEMORANDUM & ORDER**
15-CV-5527 (MKB) (RER)

-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Daphney Scott commenced the above-captioned action against Defendants E. Hope Greenberg, Capitol Discount Corporation ("Capitol Discount"), and Mylah Furniture, Inc. also known as Maylah Furniture ("Mylah Furniture"), alleging misleading and abusive business and debt collection practices in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), New York Judiciary Law § 487, New York General Business Law § 349, and New York Personal Property Law § 402. (Compl., Docket Entry No. 1.) Plaintiff filed an Amended Complaint on October 8, 2015, and a Second Amended Complaint on April 27, 2017. (Am. Compl., Docket Entry No. 4; Sec. Am. Compl. ("SAC"), Docket Entry No. 44.) Mylah Furniture has not appeared in this action since May 18, 2017, when its counsel withdrew from the case. (Order dated May 18, 2017.) Plaintiff settled her claims with Greenberg and Capitol Discount and on January 10, 2018, the Court dismissed the claims and counterclaims amongst them, leaving only the state law claims against Mylah Furniture. (*See* Stip. and Order Dismissing Parties, Docket Entry No. 66.) The Clerk of Court entered default as to Mylah Furniture on February 5, 2018. (Clerk's Entry of Default, Docket Entry No. 69.) On February

14, 2018, Plaintiff moved for a default judgment, statutory and actual damages, an award of attorney's fees and post-judgment interest against Mylah Furniture. (Pl. Mot. for Default J., Docket Entry No. 70.) The Court referred the motion to Magistrate Judge Ramon E. Reyes, Jr. for a report and recommendation. (Order dated Feb. 14, 2018.)

By report and recommendation dated August 16, 2018, Judge Reyes recommended that the Court enter a default judgment against Mylah Furniture and award Plaintiff damages (the "R&R"). (R&R 7, Docket Entry No. 71.) Judge Reyes questioned, but did not determine, whether the Court has subject matter jurisdiction over Plaintiff's claims against Mylah Furniture, and conditioned his recommendation as to default judgment on a determination as to jurisdiction. (*Id.* at 3.) Assuming the Court has subject matter jurisdiction, Judge Reyes also recommended that the Court retain supplemental jurisdiction over the state law claims over which it has no original jurisdiction. (*Id.*) Plaintiff submitted further briefing in response to the R&R, arguing that the Court has subject matter jurisdiction and should exercise supplemental jurisdiction over the claims against Mylah Furniture. (Pl. Letter dated Aug. 29, 2018 ("Pl. Letter"), Docket Entry No. 72.) For the reasons discussed below, the Court finds that it lacks subject matter jurisdiction over the claims against Mylah Furniture, and therefore denies Plaintiff's motion for default judgment.

**I. Background**

On or around September 25, 2012, Plaintiff visited Mylah Furniture to purchase several items of furniture. (SAC ¶ 12.) A store clerk at Mylah Furniture told Plaintiff that she could not purchase items on layaway but could finance a furniture purchase. (*Id.*) Plaintiff gave the clerk a few recent paystubs but did not authorize the clerk to check her credit. (*Id.* ¶ 13.) After a short time, the clerk informed Plaintiff that she had been denied financing from several financing

2

companies. (*Id.*) Plaintiff identified the furniture items she wished to purchase and planned to return later in the day to purchase the items, but the clerk told Plaintiff that she could complete the purchase by signing a document which would permit the clerk to continue to search for financing for Plaintiff's purchase. (*Id.* ¶ 14.) Plaintiff signed the document, which contained "blank portions." (*Id.* ¶¶ 15, 21.) Plaintiff asked why the document contained "blank portions," and the clerk told her that the blanks had no significance and would be filled in after financing was secured for the purchase. (*Id.* ¶ 17.) The clerk assured Plaintiff that her signature on the document only authorized him to search for financing. (*Id.*) Plaintiff told the clerk that she could not afford a high interest rate or high monthly payments and that if he could not find an affordable deal, she did not wish to purchase the furniture on credit. (*Id.* ¶ 18.) The clerk told Plaintiff that he would get her a "good deal." (*Id.*) Before leaving the store, Plaintiff paid a $50 deposit toward the total $3050 cost of the furniture. (*Id.* ¶ 19.) Several days later, the furniture was delivered to Plaintiff's home. (*Id.* ¶ 20.)

In or around October of 2012, Plaintiff received a copy of the document she signed at Mylah Furniture with the blank portions completed. (*Id.* ¶ 21.) The document was titled "Security Agreement – Retail Installment Contract" (the "Contract"). (*Id.* ¶ 22.) The Contract listed Mylah Furniture as the seller, (*id.*), provided for a 24.9% interest rate, and required Plaintiff to make thirty-six monthly payments of $119.18 beginning on October 25, 2012, (*id.* ¶¶ 23, 27). The Contract included several notices, including one stating that the Contract "may" be assigned to Capitol Discount and that the holder of the Contract is subject to all of the claims and defenses that the debtor could assert against the seller of the goods obtained pursuant to the Contract. (*Id.* ¶ 29.) After reviewing the Contract, Plaintiff called Mylah Furniture and asked if she could return the furniture because she did not agree with the high interest rate or high

monthly payments. (*Id*. ¶ 30.) Plaintiff was told that she was bound by the terms of the Contract regardless of whether she returned the furniture. (*Id*.) Plaintiff made payments pursuant to the Contract until July of 2013. (*Id*. ¶ 32.)

After Plaintiff ceased making payments, Capitol Discount began to call her cellular and home telephones approximately every other day. (*Id*. ¶ 33.) On January 7, 2014, Greenberg, representing Capitol Discount, initiated an action against Plaintiff in state civil court to collect the remaining debt owed pursuant to the Contract. (*Id*. ¶ 34.) After failing to properly serve Plaintiff with the state court summons, Greenberg negotiated a settlement with Plaintiff and told her "she did not need to go to court as long as she continued to pay Capitol Discount." (*Id*. ¶¶ 37–48.) Relying on this representation, Plaintiff did not appear in court, and Greenberg obtained a default judgment against her on April 28, 2014 in the amount of $3311.88. (*Id*. ¶ 50.) Plaintiff moved to vacate the default judgment while continuing to make payments pursuant to the settlement agreement. (*Id*. ¶¶ 57, 59–60, 62.) On June 30, 2015, the state court granted Plaintiff's request for relief from the default judgment and dismissed the case. (*Id*. ¶ 65.)

## II. Discussion

### a. Standard of review

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the

record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, --- F. App'x ---, ---, 2018 WL 2277791, at *1 (2d Cir. May 18, 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

### b. Subject matter jurisdiction

Plaintiff contends that the Court had subject matter jurisdiction over the FDCPA claims against Greenberg and, as a result, has supplemental jurisdiction over her state law claims against Mylah Furniture because they are "part of the same case or controversy" as her FDCPA claims.[1] (Pl. Letter 1.) More specifically, Plaintiff argues that Mylah Furniture's actions encouraging her to sign the Contract "constitute a necessary part of Defendants' larger scheme to defraud consumers in violation of both state and federal laws." (*Id*. at 2.)

"Under 28 U.S.C. § 1367(a), district courts 'shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they

---

[1] Even though the Court dismissed Plaintiff's FDCPA claims pursuant to stipulation between the parties, the Court may retain supplemental jurisdiction over the state law claims if doing so would promote "economy, convenience, fairness, and comity." *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004). The Court does not reach the issue of whether it should retain supplemental jurisdiction because the Court finds that it did not have subject matter jurisdiction over the claims against Mylah Furniture prior to the dismissal of the FDCPA claims.

form part of the same case or controversy.'" *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting 28 U.S.C. § 1367(a)). However, "[i]n order to exercise supplemental jurisdiction, a federal court must first have before it a claim sufficient to confer subject matter jurisdiction." *Id.* (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). In addition, both the claim conferring subject matter jurisdiction and the supplemental claim "must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Id.* (quoting *Gibbs*, 383 U.S. at 725). "In determining whether two disputes arise from a 'common nucleus of operative fact,' we have traditionally asked whether 'the facts underlying the federal and state claims substantially overlapped . . . [or] the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (quoting *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000)). Supplemental jurisdiction is proper where a state law "claim arises out of approximately the same set of events as [the] federal . . . claim." *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002).

The Court lacks supplemental jurisdiction over Plaintiff's claims against Mylah Furniture. Undoubtedly, the Court had federal question jurisdiction over Plaintiff's FDCPA claims against Greenberg based on the allegedly abusive debt collection practices he used in attempting to enforce the Contract against Plaintiff. (*See* SAC ¶¶ 99–127.) Plaintiff bases her state law claims, however, on Mylah Furniture's allegedly deceptive acts in the *formation* or creation of the Contract, (*see id.* ¶¶ 128–137), and these claims therefore do not "stem from the same 'common nucleus of operative fact'" as the FDCPA claim, *see Montefiore Med. Ctr.*, 642 F.3d at 332.

6

Although Plaintiff's FDCPA and state law claims both involve the Contract, this alone is insufficient to allow the Court to exercise supplemental jurisdiction over the state law claims. *See Unangst v. Evans Law Assocs., P.C.*, 798 F. Supp. 2d 409, 411 (N.D.N.Y. 2011) (finding that the court lacked jurisdiction over a state law counterclaim because the FDCPA claim arising from contract was only "tangentially related" to state law counterclaim for breach of that same contract). The facts required to prove Plaintiff's FDCPA claim — namely, Greenberg's harassing conduct to collect payment — are not the same as, or even relevant to, the facts showing Mylah Furniture engaged in deceptive practices to induce Plaintiff into signing the Contract. *See Achtman*, 464 F.3d at 335. The state law claims and FDCPA claims therefore do not arise out of the "same set of events." *Treglia v. Town of Manlius*, 313 F.3d 713, 723 (2d Cir. 2002).

Plaintiff's allegation that Defendants all engaged in "deceptive, harassing, and misleading behavior to collect monies to which [they] were not legally entitled" cannot serve as the basis for supplemental jurisdiction. (SAC ¶ 1.) While Plaintiff alleges that each of the Defendants routinely engage in deceptive and harassing practices,[2] (*id.* ¶¶ 1, 69–71, 84–86, 92–96), she has *not* alleged that they coordinated their efforts such that "the facts underlying the federal and state claims substantially overlap[]," *see Achtman*, 464 F.3d at 335. Because Plaintiff's FDCPA claims focus only on Greenberg's harassing conduct *after* the formation of the contract, these claims appear only tangentially related and do not arise from the "same common nucleus of operative fact." *See Montefiore Med. Ctr.*, 642 F.3d at 332. As a result, the Court does not have

---

[2] Plaintiff also asserts in her letter brief in response to the R&R, that Mylah Furniture "intentionally and routinely" utilizes Capitol Discount's standard form when engaging in deceptive sales practices, and that Capitol Discount "is routinely represented by the law firm of E. Hope Greenberg." (Pl. Letter 1–2.) These assertions do not alone demonstrate that Defendants' conduct in the formation and enforcement of the Contract is so related that Plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011).

subject matter jurisdiction over Plaintiff's claims against Mylah Furniture.

Having found that the Court lacks subject matter jurisdiction over Plaintiff's claims against Mylah Furniture, the Court dismisses the action against Mylah Furniture without prejudice.

### III. Conclusion

For the foregoing reasons, the Court denies Plaintiff's motion for default judgment, and dismisses without prejudice Plaintiff's claims against Mylah Furniture for lack of subject matter jurisdiction. The Clerk of Court is directed to close the case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 28, 2018
      Brooklyn, New York